## Case No. 7,669.

### KELLUM et al. v. EMERSON.

[2 Curt. 79.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1854.

PRACTICE IN ADMIRALTY — LIBEL TO ASSERT EQUITABLE TITLE—PART OWNER—LIBEL FOR AN ACCOUNT.

1. The admiralty has not jurisdiction over a libel which asserts an equitable title to one fourth of a vessel, and claims an account of its earnings, and of the proceeds of its sale, although the part owners sailed the vessel, and the libellant worked, as a carpenter, on board.

[Cited in The Larch, Case No. 8,085; Hill v. The Golden Gate, Id. 6,491; The Marengo, Id. 9,065; Hill v. The Amelia, Id. 6,487; The Mary Zephyr, 2 Fed. 826; Daily v. Doe, 3 Fed. 922; The C. C. Trowbridge, 14 Fed. 876; Wenberg v. Cargo of Mineral Phosphate, 15 Fed. 288; The Amelia, 23 Fed. 406; The Ella J. Slaymaker, 28 Fed. 768; Paterson v. Dakin, 31 Fed. 683; The Eclipse, 135 U. S. 608, 10 Sup. Ct. 876; The H. E. Willard, 52 Fed. 388, 53 Fed. 600.]

[Cited in Swain v. Knapp, 32 Minn. 429, 21 N. W. 414.]

2. Extent of the jurisdiction to take an account, examined.

[Appeal from the district court of the United States for the district of Massachusetts.]

In admiralty.

Mr. Dana, in support of the exception.

Mr. Durant, contra.

CURTIS, Circuit Justice. The principal question argued in this suit was, whether the libel states a case within the admiralty jurisdiction of the court. Its substance is, that the libellant [George Emerson], together with George B. Kellum, Magnus Ventriss, and Caleb B. Watts, in February, 1852, purchased the ship Mary Merrill, of one Brewer, on their joint account, and partly paid for the same; that for the security of the balance of the purchase-money, Brewer was to retain the record title of the ship, but the purchasers were to have the possession and control, and employment thereof, for a voyage to California; and after paying the balance due to Brewer, the ship was to belong to Kellum, Watts, Ventriss, and the libellant, jointly; that the vessel made a voyage to California, and earned and received a large amount of freight and passage-money; that she went thence to the Sandwich Islands, from whence she brought home a cargo and earned another large sum as freight; that, on her return, she was wrongfully sold by Ventriss and Kellum, and at their request, conveyed by Brewer to the purchaser, who having bought and paid to Ventriss and Kellum, a large sum of money for her, without notice of the libellant's title, he cannot follow his claim to the vessel into the hands of the purchaser;

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

that Kellum was master of the vessel, and Kellum and Ventriss ship's husbands, and received all the freight during the said voyages; that the libellant worked as a carpenter on board the ship before she sailed, sailed in her, and worked as a carpenter during the said voyage; that the vessel was sailed on the joint account of the libellant, Kellum, Ventriss, and Ward, and by the original contract between them, each was to do all in his power to promote the common interest. And the libel prays that Kellum and Ventriss, who, it is alleged, deny the title of the libellant, may be decreed to account, and to pay to the libellant, what shall be found due to him on account of his interest in the freight and the proceeds of the sale of the vessel. To this libel the respondents excepted for want of jurisdiction, and the exception having been overruled by the district court, and the case having come by appeal into this court, the exception has here been argued, and I shall now state my opinion thereon. It is a libel by one of four part owners of an equitable title to a vessel, against two of the other equitable part owners, who acted as ship's husbands, for an account of the earnings of the vessel and of the proceeds of the sale of that equitable title. At the argument, it was urged that the libellant and his co-owners had the legal title; and the case was likened to a sale, which passes the title as between vendor and purchaser, the vendor only retaining a lien for the price. But that lien belongs to the vendor, only because he is not obliged to part with the possession of the thing sold, until he receives the price. The libel states, that in this case, Brewer, the vendor, was to and did part with the possession, and that he was to retain the record title for his security. I cannot understand this otherwise, than that the legal title was to remain in Brewer until the balance of the price should be paid; that when paid he was to convey that title; and in the mean time the purchasers were to have the possession and those equitable rights which arose out of the executory contract of sale. Indeed it is only in this view, that the allegation, that the libellant cannot claim his interest in the vessel in the hands of the present holders, and is therefore obliged to go against the proceeds of the sale to them, can be true. If the libellant was a part owner of the legal title to the vessel, no one but himself could pass that title by a sale; and the libellant could follow and reclaim his property, out of the hands of those to whom Brewer attempted to convey it. But if he had only an equitable title, arising out of an executory contract of sale, bonâ fide purchasers of the legal title, having paid a valuable consideration without notice of the respondents' rights, would take the title discharged from the libellant's equities.

Now it is obvious that so far as respects the proceeds of the sale, the case presented by the libel is that of a breach of trust, of which a court of equity habitually takes jurisdiction. Brewer held the legal title in trust: (1) To permit the purchasers to make a voyage to California and thence back to Boston. (2) To secure to himself the payment of the unpaid residue of her price. (3) To convey the vessel to Kellum, Ventriss, Ward, and the libellant, when that residue of the price should be paid. In point of fact, on her return to Boston, and on receiving payment of the balance due to him, he conveyed the vessel to a third person, at the request of Kellum and Ventriss, and by this breach of trust the libellant was injured. It is clear a bill in equity would lie to obtain redress, and that such a bill would rest, as this libel does, upon the trust, for its support. The equitable title of the libellant, as a cestui que trust, being denied, it must be tried; and if found to exist, a court of equity would protect it and grant the appropriate relief. But a court of admiralty has not jurisdiction to try such an equitable title, and to grant the relief appropriate to it. Though it may, by a petitory suit, try the title to a vessel, I apprehend this must be confined to legal titles. I am not aware that in any case it has gone beyond these and tried and determined and undertaken to compel the performance of mere trusts. Still less, that it has done so to determine rights, not to a vessel, but to its proceeds.

It is often said that a court of admiralty is a court of equity, acting on maritime affairs. This is true when properly understood. A court of admiralty applies the principles of equity to the subjects within its jurisdiction. But that jurisdiction differs very widely from the jurisdiction of courts of chancery; and in my opinion embraces no case, where an equitable title, arising out of a trust, is the basis of the claim, and its subject-matter is the proceeds of a sale wrongfully made, in violation of that trust. I have looked in vain for any precedent or any principle upon which to place such a jurisdiction. I am not aware that in any court of admiralty in England, or in this country, any serious attempt has been made to assert it, or obtain its exercise. The nearest approach to it which I have seen is the case of Davis v. Child [Case No. 3,628]. In that case the libellant alleged he had purchased a vessel in trust for the respondents, and advanced moneys on account of the respondents for her repairs and supplies in a foreign port. And the libel prayed that the amount due to him might be decreed, and that the respondents might accept a conveyance of the vessel.

Though the subject-matter of the libel, namely, the repairs and supplies, was within the undoubted jurisdiction of the admiralty, yet Judge Ware held, that inasmuch as

it would be necessary, as the first step, to decide whether the libellant held in trust or not, the court had no jurisdiction. The case at bar goes much beyond that; for here, not only must the existence of the trust be tried, but its subject-matter, the proceeds of a sale of a vessel, are not subjects of admiralty jurisdiction. It was urged that if admiralty had jurisdiction to try the title to the vessel and to decree possession to the libellant, it would follow the proceeds and work out his rights in reference to them; and the case of Sheppard v. Taylor, 5 Pet. [30 U. S.] 675, was relied on as sanctioning this doctrine. But that case decides only that if a maritime lien, which can be enforced in admiralty, exists upon a vessel, the same lien may, under some circumstances, attach upon the proceeds; and if it does so attach, it may be enforced in the admiralty (see Cutler v. Rae, 7 How. [48 U. S.] 729). But a part owner has no maritime lien on his own property, and of course can have none on its proceeds.

So far as respects the claim of the libellant, to the proceeds of the alleged wrongful sale of his equitable title to a part of this vessel, I am of opinion there is not jurisdiction in admiralty. Viewed as a suit for an account of the earnings of the vessel by one part owner, against two other part owners, it seems to me equally difficult to sustain the jurisdiction. No doubt is felt, that a court of admiralty may take an account, when it is necessary to the exercise of its jurisdiction; as in case of a libel by seamen for services on board whaleships, who are paid by a share of the catchings, in the nature of wages. Macomber v. Thompson [Case No. 8,919]. So it may give effect to an agreement of consortship among joint salvors; because, having a clear jurisdiction over cases of salvage, such an agreement, when it exists, must be inquired into, in order to make distribution of the salvage compensation among those justly entitled thereto. Andrews v. Wall, 3 How. [44 U. S.] 568. In these and other cases, which might be mentioned, an inquiry into joint rights, and the taking of accounts growing out of those rights, are merely incidental to the exercise of an undoubted jurisdiction, over classes of cases which ordinarily do not involve any such matters, but which are not thrown out of the jurisdiction when found to involve them. But this is quite a different thing from taking jurisdiction over a class of cases, for the sole purpose of compelling an account. Though a court of admiralty is not incompetent to take an account, it must certainly be admitted that its modes of proceeding have not been framed with any special reference to doing so, and that complicated accounts between part owners of vessels, and the rights of the parties dependent on them, can hardly be worked out satisfactorily in this jurisdiction. The whole machinery of references and exceptions, and the numerous rules of pleading, and evidence, and practice, which courts of chancery have found necessary, to secure the rights of parties in suits for accounts, do not exist in the admiralty, and would not, in my opinion, be a useful addition to its simple, direct, and rapid modes of procedure.

This case presents an illustration of the great embarrassments which would attend it. Ward is not a party to this libel; and I do not perceive how he could be made a party. He has nothing in his hands belonging to the libellant. Yet it would be unjust to the respondents to proceed to take an account in his absence. When taken, it ought to bind all the part owners. A court of equity would absolutely refuse to proceed until he should be made a party. Wilson v. City Bank [Case No. 17,797]; Hagan v. Walker, 14 How. [55 U. S.] 36; Shields v. Barrow, 17 How. [58 U. S.] 141. Upon principle, therefore, I should be reluctant to attempt to apply the admiralty jurisdiction to such a class of cases, and I believe it will be found it has been refused, whenever an attempt has been made to invoke it. It is expressly disclaimed by Lord Stowell in The Apollo, 1 Hagg. Adm. 313, and by Judge Ware in Davis v. Child [supra]. In the case of The Peggy, 4 C. Rob. Adm. 304, Sir William Scott refused to require bail for the earnings of a vessel, in a cause of possession, upon the ground that the court must eventually be led into discussion of intricate and contested causes, relative to such earnings, which it could not conveniently adjust, and which it would be more convenient to the parties to have left open to some other course of inquiry. But what must be decisive of this question here, is, that in the case of The Orleans v. Phoebus, 11 Pet. [36 U. S.] 175, the supreme court has expressly declared, that admiralty has not jurisdiction in matters of account between part owners. It was suggested this was merely an obiter dictum; but it cannot be so considered; for that was a libel by a part owner, one of the prayers of which was for an account, and the question was therefore before the court, and the case called for its determination.

The libellant's counsel also relies upon the allegations in the libel, that the libellant performed work, as a carpenter, on board the vessel in Boston, and sailed in her, and did similar work during the voyage. But it is obvious that no distinct substantive claim is asserted by the libel, on this ground. It is propounded, that by the original contract between the parties, each was to do all in his power to advance the joint interests. The allegations on this subject are extremely loose and general, and I cannot learn from them that the libellant was acting on any other than this original contract, under which he embarked his services in the joint adventure, as the two respondents are alleged to have done. At all events, it is not practicable to treat this as a suit for wages, or for work and labor on a vessel, because the libellant was a part owner, and the work was done,

and the ship was sailed on the joint account of himself and the other owners; and he cannot in such a case have had any lien for wages, or work and labor, upon his own vessel. Whatever claim he may have on this ground, must form one of the items of the account to be taken of the earnings and expenses of the vessel.

It has been argued, that though admiralty has not jurisdiction of matters of account between part owners generally, yet if the part owners themselves actually serve on board in different capacities, pursuant to the original contract under which they become owners, or, to express it in different words, if several mariners buy a vessel to be navigated by them for their joint profit, the jurisdiction attaches. I do not see any sound distinction between that case, and other cases, upon which the jurisdiction can be rested. It does not change the nature of the case, that the parties to it are mariners. The jurisdiction, in cases of tort, depends on locality, in cases of contract, upon the subject-matter; but under our system, never upon the character or occupation of the parties. And although, in the case supposed, the marine services in saving the vessel, if to be compensated by wages, or by something in the nature of wages, are a subject-matter within the admiralty jurisdiction, yet if those services are to find their compensation only by forming an item in an account between part owners, of which the admiralty has not jurisdiction, they must go with the principal subject to which they are merely an incident, and find their compensation in another jurisdiction, which is competent to examine and adjudicate upon the whole subject. The decree of the district court must be reversed, and the libel dismissed for want of jurisdiction.