### CHIRURG v. KNICKERBOCKER STEAM TOWAGE CO.

(District Court, D. Maine. November 23, 1909.)

Nos. 104–106.

1. ADMIRALTY (§ 8*)—JURISDICTION—MATTERS OF DEFENSE.

In a possessory action in a court of admiralty to recover possession of vessels of which libelant alleged that he was owner claimant, a corporation filed an answer alleging that it was the owner and in possession, that it bought and paid for the vessels several years before, and had been in possession ever since, that it had the title conveyed to its then president in trust for it, and that he, although having no personal interest in such vessels, in collusion with libelant, who knew all of the facts, fraudulently executed a bill of sale to libelant. Held, that such answer stated a defense cognizable in a court of admiralty, which had jurisdiction to determine whether or not libelant's title, alleged as the basis of his right of possession, was fraudulent.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 8.*]

2. ADMIRALTY (§ 8*)—JURISDICTION—DEFENSES.

In a possessory action, a court of admiralty may take notice of an equitable title when it comes up incidentally, and especially when it is alleged by way of defense by the claimant in possession.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 125; Dec. Dig. § 8.*]

In Admiralty. Suit by Michael Chirurg against the Knickerbocker Steam Towage Company. On exceptions to answer. Exceptions overruled.

Bertram L. Fletcher, for libelant.
Benjamin Thompson, for respondent.

HALE, District Judge. These are possessory actions to recover possession of the steamers Delta, Bismarck, and Ralph Ross, and now

come before the court on exceptions by the libelant to the answer of the respondent. The three several actions may be treated as one case. The libel alleges:

(1) Ownership of the several steamers.

(2) That the Knickerbocker Steam Towage Company has exclusive possession of the steamers, and refuses to permit the libelant to take possession, and intends to send the steamers to sea without libelant's consent.

The answer is substantially as follows:

(1) It denies the ownership of the libelant.

(2) It admits that the respondent has possession of the steamers, that it refuses to permit the libelant to take possession of them, that it intends to send them to sea, and that its employment of the steamers is without the consent of the libelant.

(3) It admits the jurisdiction of the court, but denies that the allegations of the libel are true.

(4) It sets out in substance that prior to November 27, 1901, these steamers had been owned by Ross & Howell, who had been engaged in a general towing business upon the Penobscot river, and that at said time, and ever since, the respondent was, and has been, engaged in the same business upon the Penobscot and Kennebec rivers.

(5) That on November 27, 1901, Ross & Howell made an agreement with the respondent for the sale to the respondent on January 1, 1902, of these steamers, with certain other property, for $35,000, with the stipulation that Walter Ross, of Ross & Howell, should be employed as manager of the respondent's business on the Penobscot river; that thereafterwards, on February 5, 1902, the agreement was carried out, and the consideration for the purchase was paid by a promissory note; that one James T. Morse was president of and a director in the respondent corporation; that bills of sale were made to him as trustee, for the sole and exclusive benefit of the respondent corporation, he having no personal or beneficial interest in the purchase of the property.

(6) That, immediately after the purchase by the respondent, it took possession of the steamers, and has been in full, exclusive, and unquestioned use, possession, and management thereof ever since, and has received the earnings without accounting to any one, and with the full knowledge, consent, and approval of James T. Morse, who never claimed to have any personal or beneficial interest in the vessels, but acknowledged that they were the property of the respondent.

(7) That the libelant well knew that James T. Morse had no interest or ownership in the steamers, other than to hold the record title to them in trust for the respondent; yet with that knowledge, and in collusion with Morse, on May 18, 1908, the libelant conspired to defraud the towage company, by corruptly making bills of sale to himself of all the steamers, for the fraudulent purpose of enabling him to take possession of them, and compel the respondent to pay him a large sum of money, in order to obtain their redelivery, and to remove the cloud upon the title; that, although the bills of sale were made May 18, 1908, the libelant did not file them in the custom house at Bangor,

where the steamers were enrolled, until December 9, 1908; and that the respondent was not notified of the execution or record of the bills of sale until March 23, 1909.

(8) That all the bills of sale from James T. Morse to the libelant were fraudulent and void, and never conveyed any title to the libelant, but merely created a cloud on the record title of the steamers, and that the bills of sale were invalid, and were not executed in accordance with the laws of the United States.

By the exceptions, the libelant raises the contention that the allegations of the answer are not pertinent to any material issue, for the reason that they state matters of an equitable nature, not cognizable in an admiralty court.

1. Does the answer state a defense not cognizable in a court of admiralty?

I have stated the substance of the answer. It sets out by defensive allegations, propounded in a clear and orderly manner, and in compliance with the admiralty rules, that since February, 1902, the respondent has been in full and exclusive possession and management of the steamers in question; that its title came by purchase from Ross & Howell, who, as well as the respondent, were engaged in the towage business in Maine, and who had, in November, 1901, made an agreement for sale; that this agreement was consummated a little more than two months later by an actual sale and delivery of the boats to the respondent and payment for them; that the bills of sale from Ross & Howell were made to run to one James T. Morse, then president of and director in the respondent corporation; that, in taking such bills of sale, Morse acted for the sole and exclusive benefit of the respondent, and had no personal interest in the purchase; that in May, 1908, Morse made a colorable and fraudulent bill of sale of the steamers to the libelant, for the corrupt purpose of enabling the libelant to take possession of them, and compel the respondent to pay him a large sum of money, in order to obtain a redelivery of the steamers and remove the cloud upon the title; that this transfer was made with the full knowledge on the part of both that Morse had no interest or ownership in the steamers, and no title to convey; and that the bills of sale were not executed in accordance with the laws of the United States, and were invalid.

This, then, in a word, is the respondent's story: That it is the owner, and had the lawful possession, of the steamers; that the libelant, by fraudulent bills of sale, is seeking to defeat its ownership, and to deprive it of possession; that Morse, through whom the libelant claims, had neither title nor possession of the steamers, and did not, and could not, convey any title.

It seems clear to me that the allegations of the answer present issues of fact cognizable in the admiralty. Whether or not the bills of sale are fraudulent does not, of itself, present a question solely for the determination of a court of equity, although the removal of the cloud so created upon the record title would properly belong to such court. These are possessory actions; and the defensive allegations relate to the question of ownership, and hence the right of possession, of

these steamers. While at this stage of the case it is not necessary to determine how far bills of sale of vessel property are evidence of ownership, it may be observed that the jurisdiction of this court to determine the question of ownership in actions of this nature is not confined to property subject to the laws of the United States relating to registration or enrollment. The General Cass, Fed. Cas. No. 5,307. In petitory as well as in possessory proceedings, this court must necessarily determine issues of fact involved in the question of the ownership of vessels and other classes of property over which it has jurisdiction; and it cannot be that a fraudulent holder of a bill of sale, or of a bill of lading, or of any other evidence of ownership, can apply to this court for possession, and yet prevent the court from considering the validity of the title so set up. For a fraudulent title, whether acquired by bill of sale or in any other way, is not a title. It follows, then, that under the admiralty rules the facts upon which the respondent rests its defense must be set out in such defensive allegations as appear in the answer.

2. It is true that, in the answer, the respondent alleges that the bills of sale from Ross & Howell were made and received by James T. Morse as trustee, for the sole and exclusive benefit of the respondent; and it is urged by the learned proctor for the libelant that, when a trust is set up, some equitable question must be involved.

It has been held in maritime courts that, if the libelant states a trust as the foundation of his suit, he states himself out of court. In Andrews et al. v. Essex Fire & Marine Ins. Co., 3 Mason, 6, 16, Fed. Cas. No. 374, Judge Story said:

"Courts of admiralty have no general jurisdiction to administer relief as courts of equity. They cannot entertain an original bill or libel for specific performance, or to correct a mistake, or to grant relief against a fraud." Kellum et al. v. Emerson, Fed. Cas. No. 7,669; Ward v. Thompson, 22 How. 330, 16 L. Ed. 249; The Ernest and Alice, Fed. Cas. No. 3,735; The C. C. Trowbridge (D. C.) 14 Fed. 874.

It is well settled, as a general rule, that in possessory actions a court of admiralty will not take cognizance of a merely equitable right as against a claimant in possession under a legal title. The G. Reusens (D. C.) 23 Fed. 403. It may decline to enforce a legal title against a meritorious equitable title, accompanied by possession. As a rule, it will not take jurisdiction to try out titles to vessels, where only conflicting equitable claims are involved, as between mortgagor and mortgagee. The William D. Rice, Fed. Cas. No. 17,691; The John Jay, 17 How. 399, 15 L. Ed. 95. But in Davis v. Child, Fed. Cas. No. 3,628, it was said by Judge Ware:

"This court may take notice of an equitable title when it comes up incidentally, especially when it is alleged in the way of defense."

In The Daisy (D. C.) 29 Fed. 300, Judge Nelson held:

"An agent, who by fraud or mistake obtains the insertion of his own name as part owner of a vessel in the bill of sale, will be estopped from setting up this title as against his principal in a suit for possession, if the latter is in point of fact the real owner."

In Wenberg v. A Cargo of Mineral Phosphate (D. C.) 15 Fed. 285, 287, Judge Addison Brown said:

"Where the libelant is in fact the legal owner, he may enforce his legal right in this court in a petitory suit against those who have by wrong dispossessed him of his property and undertaken to transfer it to others." The Taranto, Fed. Cas. No. 13,751; Thurber v. The Fannie, Fed. Cas. No. 14,014; The Friendship, Fed. Cas. No. 5,123; The Tilton, Fed. Cas. No. 14,054.

To recur again to the allegations of the answer, it may be said that, if we eliminate the question of the bills of sale being fraudulent, still the answer sets up that the towage company is in possession under an equitable ownership of a meritorious character; and such equitable ownership clearly arises, as Judge Ware says, "incidentally" and "in the way of defense." It arises, also, in a judicial inquiry into matters where the admiralty has unquestioned jurisdiction. If the court should hold that the respondent has no standing in this court, for the reason that its answer sets up matters determinable only by a court of equity, the result might be that the libelant, having only a fraudulent or colorable title to a vessel or other property over which this court has jurisdiction, could be heard in "courts, proceeding ex æquo et bono," while the respondent, having at least a meritorious equitable title, could not be heard in defense; and this is repugnant to the whole idea of admiralty proceedings, and cannot be tolerated. It must be remembered, too, that these matters are now before me on the pleadings; and, in advance of the hearing, the court cannot determine precisely what questions will be presented by the evidence. It is not now necessary to decide whether the ownership of vessel property can pass from the vendor to the vendee by parol, accompanied by delivery, or to conclude in any way as to the nature or validity of the title of either party.

My decision is merely that, under the pleadings, a case is stated of which this court, as a court of admiralty, must take cognizance.

The exceptions to the answer are overruled.