## THE TIETJEN & LANG NO. 2.
### No. 219A.

District Court, D. New Jersey.

Jan. 13, 1944.

Winifred Sullivan, of New York City, for libellant.

Alfred R. Becker, of Jersey City, N. J., and Mahar & Mason, of New York City, for respondents.

MEANEY, District Judge.

This is an action in admiralty, brought to recover possession of the derrick lighter Tietjen & Lang No. 2, and certain other maritime equipment.

On July 16, 1942, the lighter and equipment were owned by the libellant, Lulu R. Miller, and chartered to one George E. Huntley, who held libellant's power of attorney to negotiate and close a sale of the property. On that day, while the lighter itself was in the respondent Swenson's drydock, whither it had been towed by respondent, and the other equipment was in North Bergen, New Jersey, Mr. Huntley, in response to a telegram, went to the office of the respondents in Jersey City. Huntley was peculiarly incapable of competently entering into any business transaction, being unfortunate enough to be partially paralyzed and so blinded as to be unable to read either the contract of sale which he subsequently signed or the checks which were given to him in return for his signature. Doubtless because of this infirmity, Walter Swenson, who transacted all the respondents business, read orally to Mr. Huntley the terms of a contract of sale which he wished Huntley to sign. Huntley refused to so sign, however, declaring that the contract referred to equipment which he had never heard of. He avers, and the respondent Walter Swenson denies, that he suggested the desirability of having the libellant's attorney present when the contract was signed, and that the respondent refused to accede to this request. At any rate, Huntley left the office, and, while sitting on the pier in order to relieve an attack of pain which he had suffered, was accosted by a representative of Swenson and brought back to the office; there a contract of sale was again read to him, though whether the contract so read was the same one previously read to him or not is a matter in dispute, and this time he affixed his signature to it. The contract provided that $3,500 would be paid to the libellant in return for the lighter and equipment, as follows: "$2,500 cash on delivery of the derrick on dry dock"; the remaining $1,000 was to be retained by respondents as security for certain wharfage charges and the like. When Huntley signed the contract Swenson gave him two checks, one a check of John Swenson Dry Docks for $1,500, signed by John Walter Swenson, and one a check for $1,000, both made payable to "Derrick Lang No. 2 Merchandise and Owners". Huntley sealed the two checks, his copy of the contract, and his power of attorney in an envelope, and entrusted it to Swenson for safe-keeping. Returning the following day, he found that Swenson had opened the envelope and removed the power of attorney, which he refused to give up. Before giving the checks to Huntley, Swenson made the latter sign a receipt, as follows: "Received from U. & S. Salvage Company and/or John Walter Swenson, by checks, as follows: on account of pur-

chase of Derrick Lang No. 2,.merchandise and owners—from Lulu R. Miller and George E. Huntley, et al as follows:" A description of the two checks followed.

Timely efforts by Huntley to cash the checks (at which time he for the first time discovered the manner in which they were executed) failed of their purpose, for no bank would undertake to honor such vague instruments. The libellant herself then made timely efforts to deposit the checks in her account, but these efforts were foredoomed to failure for the same reason. Swenson has testified that subsequently, and not later than July 31, 1942, he stopped payment on the checks, allegedly because of the pendency of an action in the Chancery Court of New Jersey regarding ownership of the lighter in question.

The respondents in their trial memorandum, urge three main points, as follows:

(1) This court is without jurisdiction.

(2) Libellant has no title or right of possession to the chattels in question.

(3) Laches is a bar to the relief sought by libellant.

■ The first contention of the respondents is without merit. This is not, as they maintain, an action on a contract, maritime, or otherwise. It is a possessory action to recover the physical possession of a ship and other maritime equipment to which the libellant is by right entitled and of which she is being tortiously deprived.

The underlying principle is stated simply in Benedict on Admiralty, volume 1, chapter X, s/s 73 (pages 153, 154): "The admiralty has also jurisdiction of possessory and petitory suits * * *. Possessory actions are actions to recover ships or other property to which a party is of right entitled. They are analogous to the action of replevin or detinue at the common law, in which the specific property is recovered instead of damages. These actions are brought by owners to try the right to possession of a ship, by masters, seamen, or lienors to recover possession. *Possessory suits may be brought in all cases to reinstate the owners of ships who have been wrongfully deprived of their property*. (Emphasis mine.)

Clearly, the present action falls into the category of a possessory action, over which this court has admiralty jurisdiction. It is not in any sense an action on a contract, but rather an attempt to regain possession of a boat and equipment to which libellant has the legal title.

■ The second contention of the respondents is unmeritorious. Under the terms of the contract of sale, $2,500 in cash was to be paid by the respondents upon delivery of the derrick on dry dock. In effect, this meant that $2,500 in cash was immediately due and payable, for the derrick was at that time in Swenson's possession. Referring to this cash provision of the contract, respondents in their trial brief state that: "Even if it were contended that the payment of the sum of $2500.00 at the time of delivery was a condition to the transfer of title, under the facts in the instant case such condition was waived."

Respondents then quote from Williston on Sales (2d edition) par. 346, pp. 816, 817, 820, as follows:

"If the condition protecting seller has been waived by him, as of course it may be, the buyer's title becomes absolute * * * It is universally admitted in the decisions that delivery is at least evidence of a waiver, and, if the buyer is allowed to retain the goods for a considerable time without objection, this evidence is conclusive * * *."

"Accordingly, if after bargaining for a cash sale, the seller *subsequently* voluntarily delivers to the buyer the goods with intent that the buyer may immediately use them as his own without insisting upon contemporaneous payment, this action is absolutely inconsistent with the original bargaining. Such a delivery is not only evidence of the waiver of the condition of cash payment, but should be conclusive evidence." (Emphasis added.)

It is obvious that the word "subsequently", in this statement of the learned author, is of very great importance. It is not unreasonable to argue that a seller who, after having bargained for a cash transaction, *subsequently* delivers the goods to the buyer without a tender of cash has waived the provision about cash payment. But that is not the case here. There was no delivery of the goods *subsequent* to the agreement. The derrick was already at Swenson's dock when the contract of sale was signed. That contract called for a cash payment. There was no subsequent waiver of this provision, and if there had been a prior waiver the provision would never have appeared in the contract.

462

The payment of $2,500 in cash was a condition precedent to the passing of title. The cash was never paid, and so title to the goods never changed hands; it remained in the libellant, Lulu R. Miller. It is well settled that payment by check is not payment in cash. A fortiori payment by checks which prove to be non-negotiable and worthless is not payment in cash, and, indeed, not payment at all.

Respondents maintain that the acceptance of checks by Huntley was a waiver of the provision of the contract which stipulated that payment was to be made in cash upon delivery of the goods. Such a contention is untenable. Certainly it cannot be said that a man accepts a check as payment for goods until he has read the check and is satisfied as to its worth and negotiability. In the instant case, Huntley, doubtless due to his blindness, was unaware of the manner in which the checks were drawn until the time at which he presented them to the bank, when payment was refused. When can it reasonably be maintained that he accepted these checks as payment—before he knew what they said on their face? Or after the bank refused to cash them? Obviously, there was never an acceptance of these checks as payment sufficient to constitute a waiver of the right to a cash payment.

Respondents also seek to make much of the fact that they have expended a considerable sum of money on the lighter since acquiring possession thereof, claiming that the libellant should have brought this action sooner or in some other way put them on notice that she was demanding possession of the lighter. But it appears from the facts in the case that on August 28, 1942, Mr. Swenson's attorney was notified that Swenson had not acquired title to the property in question. There is nothing in the facts to indicate that any great part of the work done on the lighter was undertaken by the respondents before this date of notification.

In a case like the one at bar, one of the parties must be hurt. It is elementary law that the burden must fall on the person who has made possible the situation in which the parties find themselves, and not on a party entirely innocent of any blame.

The libellants conduct throughout the entire proceedings was equitable and blameless. Whatever irregularity exists would seem attributable to the conduct of the respondents, and it is but equitable that those responsible for the creation of the situation here existent should bear whatever loss ensued therefrom.

Judgment will be entered for the libellant, Lulu R. Miller.