## THE CAPTAIN JOHNSON.

### LAUDEMAN et al. v. JOHNSON.
No. C–5564.

District Court, D. New Jersey.
Feb. 25, 1946.

Graham & Lamon and Lewis, Wolff & Gourlay, all of Philadelphia, Pa., and S. Rusling Leap, of Camden, N. J., for claimant-respondent.

Howard M. Long, of Philadelphia, Pa., and Samuel F. Eldredge, of Cape May, N. J., for libelant.

FORMAN, District Judge.

Thomas Johnson, during his lifetime, was the owner of a duly licensed and enrolled party fishing boat—the gas screw "Captain Johnson." He died testate, on August 14, 1933. In his will he bequeathed the boat to his son, Ralph W. Johnson, for his life, unless the wife of his said son, Lillian, should predecease him. If she did, then the boat was to pass to Ralph W. Johnson, absolutely. If Ralph W. Johnson died before his wife, all of the children of Thomas Johnson were to share alike in the boat and the share of any deceased child was to pass to his or her child or children, if any. Thomas Johnson named five children in his will—Effie Holmes, Ralph W. Johnson, Vivian Lyle, Clinton Johnson and Vaud Johnson and they were all nominated as executors thereof.

After the death of the senior Johnson, Ralph W. Johnson came into possession of the boat, and shortly thereafter, suggested that a change be made in its engine and presented a certain paper to Effie Holmes, Vivian Lyle and Vaud Johnson (now Laudeman), which they signed as surviving executrices of the will of their father. Clinton Johnson had predeceased his father and Effie Holmes died somewhat later. Vaud Johnson Laudeman and Vivian Lyle are now the surviving executrices of the will of Thomas Johnson and they filed the libel herein. In it they relate the foregoing circumstances. They also allege that the paper they signed, together with the late Effie Holmes, represented to be connected with a change in the boat's engine, turned out to be a bill of sale wherein they conveyed the interests of the remainderman in the "Captain Johnson" to Ralph W. Johnson and that he induced the execution of that document by fraudulent misrepresentation.

When Ralph W. Johnson died on May 10, 1944, he left all of his estate to his widow, Lillian B. Johnson, named as the respondent in the libel, who retained possession of the "Captain Johnson."

The libelants, as executrices of the will of Thomas Johnson, for themselves and on behalf of any other beneficiaries entitled to participate in the title to the boat, seek a decree that the immediate title to, and possession of it should be delivered to them in accordance with the terms of the will of Thomas Johnson.

The respondent, Lillian B. Johnson, has filed peremptory exceptions to the libel in which she charges that the facts averred in it neither constitute a cause of action within the admiralty or maritime juris-

diction of this court nor do they give rise to a maritime lien upon the gas screw "Captain Johnson."

The libelants counter the exceptions of the respondent with the argument that this action "is a petitory and possessory proceeding brought to sustain the title in the libelants and also to sustain their right to the possession of the boat." They contend that they had a legal right under the will of Thomas Johnson to the boat and they were first deprived of it by the false and fraudulent representations of Ralph W. Johnson and that they continue to be deprived of their right by the claim of the respondent under the will of Ralph W. Johnson.

The libelants have cited a number of cases in which the admiralty jurisdiction was held to be properly involved in cases wherein the ownership and possession of vessels were involved. Some similarities to the case at bar are found in Ward v. Peck, 59 U.S. 267, 15 L.Ed. 383; The Kitty C, D.C., 20 F.Supp. 173; The Blairmore I, 2 Cir., 10 F.2d 35; Chirurg v. Knickerbocker, D.C., 174 F. 188; and The Daisy, D.C., 29 F. 300. The last named case is more nearly analogous to the instant case than any of the others. Yet it is distinguishable. In it, one Cameron bought a boat and paid in full for it. He was promised a bill of sale by the vendors, and sent Howard to get it. Howard somehow contrived to have the vendor make the bill of sale to Cameron and himself. He was to use the boat for fishing and divide half the profits with Cameron. Some time later he sold his purported half interest in the boat to Fallon, who conveyed that interest to Bradshaw. The latter as respondent to a libel brought by Cameron challenged the jurisdiction of the court to decree possession to Cameron and insisted that his only remedy was in a court of equity. The court held that respondent received no better title than Howard had, that it was apparent from the evidence that the respondent and his predecessor had bought from Howard with notice of Cameron's claim and that they were connected with the transaction only for the purpose of assisting Howard to defraud Cameron. The court said:

"Though a court of admiralty has not the jurisdiction of a court of equity, to enforce direct trusts relating to real or personal property, it is not bound to treat as a trust a title obtained by fraud, or mistake, or one which the holder is estopped to set up against the party seeking relief." 29 F. at pages 301, 302.

The distinction between this case and the instant case, and the distinction which characterizes all of the other cases cited by the libelants, is that in each libel we find that legal title to the res is alleged to be in the libelant without limitation. In each case some force comes into play from a source extrinsic to the libelant to divest him of title and possession. In our case, the libelants admit they, themselves, however inadvertently and by fraud, placed the legal title to the boat in question in Ralph W. Johnson from whom, it went by inheritance to his wife, the respondent, Lillian B. Johnson. On the face of the libel it is therefore suggested that the legal title as represented by the bill of sale libelants were allegedly fraudulently induced to sign, was, indeed, in Ralph W. Johnson and at best, an equitable interest in themselves. We are constrained to the opinion that upon this libel the pattern is patently one for equitable relief to cancel or rescind the bill of sale allegedly fraudulently obtained by Ralph W. Johnson and to have the vessel directly impressed with a trust in favor of the libelants.

The doctrine governing admiralty jurisdiction is described in 1 Benedict on Admiralty § 73, 6th Ed., as follows:

"The admiralty has also jurisdiction of possessory and petitory suits and of proceedings on the part of the owners for the removal of the master.

"Petitory suits are suits in which it is sought to try the title to a ship independently of any possession of the vessel. A possessory action may be joined with a petitory action.

"Possessory actions are actions to recover ships or other property to which a party is of right entitled. They are analogous to the action of replevin or detinue at the common law, in which the specific property is recovered instead of damages. * * * In this country, the jurisdiction of the admiralty over all this class of cases is well settled. It will not enforce a merely equitable title of one out of possession, yet may notice an equitable title alleged by a claimant in possession. * * *."

In The Helys, D.C., 173 F. 928, the libelants alleged that they were the lawful owners of a gasoline yacht which had been wrongfully withheld from them by one holding their mortgage, the execution of which

had been induced by fraudulent misrepresentations. The court said:

"So far, however, as appears from the libel, the question involves a mortgage of the vessel and the court in order to determine the action would be required to adjudicate upon the validity of the mortgage and try the questions of fraud and mistake. Gillespie is apparently rightfully in possession and until these questions are determined adversely to him, should continue in possession. It is well settled that admiralty will not entertain jurisdiction of a matter of this kind. The G. Reusens, D.C., 23 F. 403; The Amelia, C.C., 23 F. 406." 173 F. at page 929.

Substitute "bill of sale" for mortgage and Lillian B. Johnson for Gillespie and the language is dispositive of the case before us.

Analysis of the case of Atamanchuck v. Atamanchuck (The Supply No. 3), D.C., 61 F.Supp. 459, leads to the conclusion that it likewise does not have application in the light of the allegations of the libel before us.

The exceptions to the libel should be sustained.