George J. STATHOS, as owner of the S.S. Maro, her engines, etc., Libellant,

v.

THE MARO, her engines, etc., and against all persons intervening for William F. Murphy, Sr., William F. Murphy, Jr., Maria Trading Corporation of Panama, and the Gallie Corporation, Respondents.

No. 7633.

United States District Court
E. D. Virginia, Norfolk Division.

Sept. 27, 1955.

Baird, White & Lanning, Francis N. Crenshaw, Norfolk, Va., for libellant.

Jett, Sykes & Howell, Henry E. Howell, Jr., Norfolk, Va., for respondents.

HOFFMAN, District Judge.

George J. Stathos filed what purports to be a possessory libel against the S.S. Maro, her engines, etc., praying for the appointment of a ship's agent as trustee to operate the vessel under its existing charter pending determination of the rights of the parties, and for an accounting of all receipts and expenses in connection with the operation of the vessel since May, 1955.

The claimant-respondent, Maria Trading Corporation, denies the jurisdiction of a court of admiralty and the matter is on exceptions to the libel.

The purchase of the Maro, ex Merope, was negotiated by Stathos in February,

1955, and, by a certain written agreement, Maria Trading Corporation was designated as "purchasers". Stathos signed the agreement in behalf of Maria Trading Corporation. Under date of April 2, 1955, this corporation addressed a letter to Stathos confirming and clarifying the agreement existing between Stathos and Maria Trading Corporation. In substance, this letter indicates that Stathos and the corporation had joined in a steamship venture on an equal basis, same resulting in the purchase of the Maro; that Stathos, or his designates, are owners of a one-half interest in the vessel; that the ship, being of Panama registry, has been transferred to Maria Trading Corporation of Panama; that the corporation has no other assets or debts and 500 shares of bearer type stock have been authorized; that the corporation borrowed $225,000 (to purchase the vessel) with the loan guaranteed by one Murphy and his interests; that when the loan is repaid from ship's profits, or the Murphy interests otherwise released from the guaranty, the corporation agreed to deliver to Stathos, or his designates, 250 shares of stock "representing one-half interest in the Maria Trading Corporation and the S/S Maro"; that, pending the repayment of the loan and delivery of the stock, no salaries or expenses would be paid to any officers or directors of the corporation; that the Maro will not be sold, transferred or otherwise encumbered without the written approval of Stathos; and that the Maro will be jointly operated between the parties with all operational expenses being subject to mutual approval. This letter agreement was approved by Stathos.

We now come to the written agreement between Stathos and William F. Murphy, Jr., dated May 27, 1955. It recites the ownership of the vessel by the corporation, with the title to the stock being held by Murphy free of any trust or fiduciary obligation except as to Stathos. The agreement further provides that the obligations of the corporation up to May 30, 1955, shall be assumed by Murphy, and that Murphy has agreed to sell all of the authorized and outstanding stock of the corporation to Stathos, who has similarly agreed to purchase, for the sum of $340,-000, with the stock to be delivered to an escrow agent until payment in full has been made. The terms of payment were $10,000 upon the signing of the agreement, $25,000 on or before June 3, 1955, $15,000 on or before June 30, 1955, and the balance paid from the ship's profits, the details of which are not pertinent. In addition, pending the payment in full of the purchase price, Stathos was given the right and authority on behalf of the corporation to sell the vessel provided the net proceeds of sale exceeded the indebtedness of Stathos under the agreement. Paragraph 6 then provides:

"As long as Stathos shall not default under this agreement, Murphy shall not have any right directly or indirectly to sell the vessel, but in the event that Stathos fails to make payments as provided above, Murphy, on behalf of the corporation, may sell the vessel to any one provided (1) Stathos is given thirty days to match any offer, and (2) the sale is in fact made in good faith. The net proceeds of such sale shall first be used to pay any indebtedness due under this agreement and the balance shall be payable for Stathos' account".

The libel, while failing to allege compliance by Stathos with the time payments specified in the agreement of May 27, 1955, avers that the Maro has completed three voyages under its charter and that respondents have refused to account to Stathos for the revenue and expenses and have ceased to consult with Stathos as to the operation of the vessel. It further alleges that, due to the increased market value of vessels of this type since May 27, 1955, respondents have refused to deliver the stock in escrow and have offered the vessel for sale on the open market. The respondent, Murphy, has now suggested that he would complete the transaction if the sales price of the stock is increased from $340,000 to $400,000. It is likewise contended that

the managing agent, the Gallie Corporation, and William F. Murphy, Sr., and William F. Murphy, Jr., all of whom are named respondents herein but have not been served with process, have operated the Maro in a negligent, improper, inefficient and careless manner, thus impairing libellant's interest in the vessel.

█ Under the facts above stated it would appear that the primary purpose of this action is to require specific performance of the agreement to transfer the stock of Maria Trading Corporation. It is the opinion of this Court that admiralty has no jurisdiction to entertain such a controversy and the exceptions must be sustained with the resultant dismissal of the action. While libellant has requested leave to amend in the event the exceptions are sustained, it is difficult to comprehend how libellant will be able to establish jurisdiction. Subject to the right of respondents to object to any amendment, a period of 15 days from the date of this memorandum will be granted libellant to present an amended libel should he be so advised.

██ It will be noted that the legal title to the Maro is vested in Maria Trading Corporation, with the right of possession presumably in the managing agent, the Gallie Corporation, until such time as libellant pays the balance of the purchase price. If this be an action in which libellant seeks to establish title to the vessel, it is a petitory suit; all of which must be based upon a legal title and not an equitable interest therein. 2 C.J.S., Admiralty, § 56, n. 69, p. 111. If this be a possessory action, it is akin to the action of replevin or detinue at common law, and admiralty will not enforce a merely equitable title of one out of possession, although it may take cognizance of an equitable claim of one in possession. The general use of a possessory action seems to be to restore or reinstate possession rather than grant original possession. Benedict on Admiralty, Vol. 1, sec. 73, pp. 153, 154, 155.

While the factual situation is not identical, the principles stated in The Eclipse, 135 U.S. 599, 10 S.Ct. 873, 876, 34 L.Ed.

269, appear to be controlling in this statement:

"So far as the creditors or intervenors were concerned, if the former desired to wind up the trust, or the latter to enforce an alleged contract of sale, which is, indeed, what is asked by this intervention, they should have resorted to a different tribunal. While the court of admiralty exercises its jurisdiction upon equitable principles, it has not the characteristic powers of a court of equity. It cannot entertain a bill or libel for specific performance, or to correct a mistake, (Andrews v. [Essex Fire & Marine] Ins. Co., 3 Mason 6, 16 [1 Fed.Cas. page 885, No. 374],) or declare or enforce a trust or an equitable title, (Ward v. Thompson, 22 How. 330 [16 L.Ed. 249]; The Amelia, 6 Ben. 475 [12 Fed.Cas. page 150, No. 6,487]; Kellum v. Emerson, 2 Curt. 79 [14 Fed. Cas. page 263, No. 7,669],) or exercise jurisdiction in matters of account merely, (Grant v. Poillon, 20 How. 162 [15 L.Ed. 871]; Minturn v. Maynard, 17 How. 477 [15 L.Ed. 235]; The Ocean Belle, 6 Ben. 253 [18 Fed.Cas. page 524, No. 10,402],) or decree the sale of a ship for an unpaid mortgage, or declare her to be the property of the mortgagees, and direct possession of her to be given to them, (Bogart v. The John Jay, 17 How. 399 [15 L.Ed. 95].) The jurisdiction embraces all maritime contracts, torts, injuries, or offenses; and it depends, in cases of contract, upon the nature of the contract, and is limited to contracts, claims, and services purely maritime, and touching rights and duties appertaining to commerce and navigation. People's Ferry Co. v. Beers, 20 How. 393, 401 [15 L.Ed. 961]."

In The Ella J. Slaymaker, D.C., 28 F. 767, 768, it is said:

"The bill of sale, therefore, whether considered as the transfer of the property by way of a pledge or collateral security, or as a mere mort-

gage for the repayment of a loan, or as indemnity against a contingent loss, not being for the benefit of the vessel, and in nowise related to her use, does not afford a proper subject for admiralty. The contract is not, *per se*, a maritime one. The libelant retains only an equitable title to the vessel, and courts of admiralty in this country confine their jurisdiction to the trial of legal titles, and do not compel the performance of mere trusts."

To the same effect, see The Captain Johnson, D.C., 64 F.Supp. 559; The Ada, 2 Cir., 250 F. 194; Hirsch v. The San Pablo, D.C., 81 F.Supp. 292, 1948 A.M.C. 1992; The Guayaquil, D.C., 29 F.Supp. 578; The Tietjen & Lang No. 2, D.C., 53 F.Supp. 459.

Atamanchuck v. Atamanchuck, D.C., 61 F.Supp. 459 (decided by the same Judge who wrote the opinion in The Tietjen & Lang No. 2, supra), is readily distinguished in that it involved a bill of sale which was allegedly forged and the admiralty court took jurisdiction.

Libellant relies upon The Daisy, D.C. 29 F. 300. The case is analogous to Atamanchuck, supra, as the purchaser was defrauded by one Howard in permitting the bill of sale to be made out in Howard's name after possession of the vessel had been actually delivered to libellant. Howard was acting merely as an agent for libellant and the subsequent purchasers from Howard took no better title than Howard had. The extent of this decision is to confer admiralty jurisdiction in a case where libellant is entitled to possession but has been deprived of record title through fraud or mistake. The Daisy was ably distinguished in The Captain Johnson, supra.

Tested by these principles it is abundantly clear that, in this case, the court of admiralty has no jurisdiction. While libellant urges that his position is one which is tantamount to having been in possession of the vessel and thereafter ousted, such a contention is undoubtedly a strained construction of the facts.

Present order on notice.