Norman SILVER, Plaintiff,

v.

The **SLOOP SILVER CLOUD**, her engines, tackle, apparel, etc., and A. LeComte Company, Inc., and all other persons lawfully intervening for their interest in said sloop, Defendants.

No. 66 Civ. 2031.

United States District Court
S. D. New York.

Aug. 23, 1966.

---

Anthony B. Cataldo, New York City, for plaintiff.

Gaynor, Freeman, Glick & Pisani, New Rochelle, N.Y., Joseph Pisani, New Rochelle, N.Y., of counsel, for defendants.

## OPINION

TENNEY, District Judge.

Plaintiff herein moves pursuant to Rule D of the Supplemental Rules for Certain Admiralty and Maritime Claims for an order awarding him immediate possession of the Sloop "SILVER CLOUD" and directing the Marshal to turn over the said vessel to him. The facts, which are substantially agreed upon, are as follows:

On May 24, 1965, defendant A. LeComte Company, Inc. entered into a contract with plaintiff whereby said defendant agreed to build a sloop for plaintiff for $27,750.00. The vessel was to be constructed in Holland according to specifications set forth in the written agreement. On October 4, 1965, a further agreement was entered into by the same parties which provided for the installation of certain extra equipment in said vessel at an additional cost of $3,309.00. The sloop was to be delivered to plaintiff in May 1966.

Clause 3 of the printed contract of May 24, 1965, provided that:

> Title to the vessel hereby ordered shall not pass to purchaser until the entire purchase price *and any extra or additional charges have been paid in*

*full* or security acceptable to builder given therefor, and builder has delivered its bill of sale or as hereinafter provided. (Emphasis added.)

The vessel had been launched in Holland and had been transported to New York where, on May 26, 1966, defendant offered the vessel to plaintiff. Plaintiff had already paid $27,750.00 as of that date. Plaintiff examined the sloop and found it to be defective in that, among other things, a gas engine had been installed rather than a diesel engine, and the builder had failed to install a seventh bunk as per the agreement of October 4, 1965. Other extras which had not been ordered had been installed on the vessel. These extras had a value of nearly $1,000.00 according to defendant's allegation. Plaintiff does not dispute this.

According to plaintiff's affidavit, he offered to accept the sloop if he would receive a reduction in price of $4,600.00. Defendant's president states that an agreement was reached whereby plaintiff was to receive the vessel upon making an additional payment of $2,664.98. Although plaintiff states no agreement was then reached, he then contradicts this statement by alleging that on June 11, 1966, after taking the sloop on a trial run accompanied by defendant's employee, he tendered a check to the employee in the amount demanded by defendant. Plaintiff's denial of an agreement is also contradicted by a bill appended to defendant's answer dated May 26, 1966 which shows a balance due of the amount demanded by defendant. Said bill has been initialed by plaintiff. The tendered check was not accepted because the employee had been advised to accept only cash or a certified check. Defendant alleges that plaintiff promised to return with payment in cash, which he failed to do.

On June 23, 1966, plaintiff demanded possession of the sloop plus the payment of $4,600.00 for defendant's breach of contract. This demand was refused and defendant's president, on the same day, wrote to plaintiff demanding payment of the balance due and storage fees for the "SILVER CLOUD" at the rate of $10.00 per day from May 26, 1966. Plaintiff claims that this letter shows defendant recognized that plaintiff had title. This contention will be more fully examined later herein.

In any event, attorneys for both sides reached an agreement on June 28, 1966 whereby defendant was to "repurchase" the sloop and pay for extras that defendant had allowed plaintiff to install. Payment was to have been made in the early part of July 1966, but defendant alleges that it was unable to make payment upon the due date.

On July 8, 1966, plaintiff instituted an action in this Court requesting a warrant of arrest of the said vessel, an award to him of possession and damages for breach of contract in the sum of $50,000.00. The sloop was arrested on that day with notice of seizure given the defendant. Upon failure of defendant to make claim to "SILVER CLOUD" within 10 days, plaintiff commenced this possessory or petitory action.

Much of this opinion hinges upon an interpretation of the recent amendments to the Federal Rules of Civil Procedure effective July 1, 1966. Although the amendments have the effect of merging the Admiralty Rules into the Civil Rules, the merger has not been complete and not all distinctions have been eradicated. Indeed, Rule 9(h) of the Federal Rules of Civil Procedure provides: "If the claim is cognizable only in admiralty it is an admiralty or maritime claim for those purposes whether so identified or not." The Advisory Committee Note to that Rule then states that, "Some claims for relief can only be suits in admiralty, either because the admiralty jurisdiction is exclusive or because no nonmaritime ground of federal jurisdiction exists."

Plaintiff's motion is brought under Rule D of the Supplemental Rules for Certain Admiralty and Maritime Claims. It is my conclusion that Rule D, dealing with Possessory, Petitory and Partition Actions, is subject to Rule 9(h) and thus requires the existence of admiralty jurisdiction. Rule D deals with the right to possession of vessels or other

maritime property only. Surely it would be incongruous to conclude that the Rule provides any relief other than that which is maritime. The mere fact that Rule D appears in the supplemental admiralty rules should be sufficient in itself to show that it should be limited to maritime claims. Therefore, plaintiff's argument that even if there is no admiralty claim jurisdiction can be based on diversity is without merit. Plaintiff's complaint alleges that both parties are New York citizens while his affidavit alleges that he is a citizen of Newton, Massachusetts. The contract annexed to the answer sets forth plaintiff's residence as Newton, Massachusetts. Because of my views hereinbefore expressed, however, I find it unnecessary to make any determination as to whether plaintiff has properly alleged diversity jurisdiction. It is necessary, however, to determine whether this Court does in fact have admiralty jurisdiction.

The Supreme Court has stated that, "The boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw." Kossick v. United Fruit Co., 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed. 2d 56, rehearing denied, 366 U.S. 941, 81 S.Ct. 1657, 6 L.Ed.2d 852 (1961). It is stated that a maritime contract is one "which concerns transportation by sea, relates to navigation or maritime employment, or involves navigation and commerce on navigable waters." General Engine & Mach. Works, Inc. v. Slay, 222 F.Supp. 745, 747 (S.D.Ala.1963). Where the contract relates to the use of the vessel or to commerce on navigable waters, it is subject to admiralty jurisdiction whether it is to be performed on land or water. 1 Benedict, Admiralty § 64, at 130 (6th ed. 1940). In Thames Towboat Co. v. The "Francis McDonald", 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245, (1920), the Court stated that an agreement providing for complete construction of a ship is not within admiralty jurisdiction. Id. at 243, 41 S.Ct. 65. No distinction was drawn between con-

tracts for construction done before the hull is in the water and construction done thereafter. Id. at 245, 41 S.Ct. 65. The crucial question to be answered is not the point in time in which the contract was made, but the purpose of the contract. If it is for construction of a ship, admiralty has no jurisdiction.

Plaintiff alleges that the boat is an instrument of navigation because it has been on navigable waters. For this proposition he cites Tucker v. Alexandroff, 183 U.S. 424, 22 S.Ct. 195, 46 L.Ed. 264 (1901), and Kilb v. Menke, 121 F.2d 1013 (5th Cir. 1941). Both cases are readily distinguishable.

In *Tucker*, the Court stated that a vessel became a ship when launched. However, the decision did not concern a contract to construct a ship. Rather, it dealt with the question of when a vessel becomes a ship for purposes of international treaties concerning forced return of deserting foreign seamen. The Court stated that the ship *itself* became subject to admiralty jurisdiction at the moment of launching, but it did not state that a contract to build a ship is so subject. Tucker v. Alexandroff, supra 183 U.S. at 438, 22 S.Ct. 195.

In *Kilb,* the Fifth Circuit held that a houseboat without motor or rudder which had been in navigation was still subject to admiralty because no intent was shown to take the boat out of navigation. Again, even though the vessel was subject to admiralty, the case did not involve an attempt to subject a contract to construct a ship to admiralty jurisdiction.

In the case at bar, the dispute clearly arises out of an agreement to construct a ship. Whether the contract concerns construction before or after the ship has been launched is immaterial. See General Engine & Mach. Works, Inc. v. Slay, supra 222 F.Supp. at 748; Grand Banks Fishing Co. v. Styron, 114 F.Supp. 1, 3 (D.Me.1953). The dispute in question arises out of nothing maritime; it is merely a dispute on the contract. All problems of the instant case relate to interpretation of the contract to build a ship: the price, the time at

which title passes, and the arguments as to which party has breached. No maritime claim has been shown.[1]

It is then necessary to determine if plaintiff has properly brought a possessory or petitory action. It has been determined that the right to bring a possessory or petitory suit requires the existence of a maritime question and that no maritime question has been found. However, my decision may just as readily rest on alternate grounds.

■ A petitory suit is defined as one seeking to try title to a vessel independently of possession. 1 Benedict, Admiralty § 73, at 153 (6th ed. 1940). It requires plaintiff to assert a legal title to the vessel; mere assertion of an equitable interest is unsufficient. The Amelia, 23 F. 406 (C.C.S.D.N.Y.1877); Stathos v. The Maro, 134 F.Supp. 330, 332 (E.D.Va.1955). It must be noted that plaintiff on this motion makes no claim to legal title in his moving papers, seeking only possession pending the outcome of his action, so this would seem to eliminate a petitory action.

■ A possessory action is one where a party entitled to possession of a vessel seeks to recover that vessel. It is brought to *reinstate* an owner of a vessel who alleges wrongful deprivation of property. 1 Benedict, supra § 73, at 154. This statement indicates that the action is one to recover possession rather than to obtain original possession. Stathos v. The Maro, supra at 332; see The Guayaquil, 29 F.Supp. 578 (E.D.N.Y. 1939). Plaintiff cites The Tietjen & Lang No. 2, 53 F.Supp. 459 (D.N.J.1944) as authority for the proposition that an owner may recover possession of a vessel under the maritime jurisdiction of the Court. This is correct, but the *Tietjen*

decision is distinguishable from the case at bar. There, the libelant had possession at one time which he sought to recover. Here, there is no showing that plaintiff was ever in possession. The additional cases cited by plaintiff are no authority for the proposition that one never in possession may bring a possessory action. It would therefore seem that there is no basis for a possessory action. However, again I need not reach my decision on these grounds alone.

■ The Uniform Commercial Code (hereinafter cited as "U.C.C."), which was in effect in New York when the agreement in issue was made, provides at § 1–105 that this law shall apply "to transactions bearing an appropriate relation to this state" unless the parties agree that the law of another state having a reasonable relation with the transaction shall apply. No contrary provision appears in this contract. Here, the contract was made in New York and payment and delivery were to be in New York. Therefore, the U.C.C. is applicable to this transaction.

■■ Plaintiff alleges that under § 2–401(2) (b) of the U.C.C., where the contract requires delivery at destination, title passes on tender of the goods. This would be true except that the section cited prefaces this statement with the phrase "unless otherwise explicitly agreed." Clause 3 of the May 24, 1965 contract has been previously set forth in full. I hold that this clause fulfills the requirement of the U.C.C. that an explicit statement can alter the title-passing provision. Plaintiff's argument that Clause 3 contravenes the statutory provisions of the U.C.C. is without merit. He argues that the contract clause relating to passing of title cannot contra-

---

1. This is even conceded by plaintiff's brief on the motion. Plaintiff's attorney states, "Hence, the dispute * * * is not over the title to the boat but as to how much is owed by defendant to plaintiff or by plaintiff to defendant regarding the extras." In the *Thames Towboat* case, supra 254 U.S. at 243, 41 S.Ct. 65, the Supreme Court stated that the contract for construction is a contract for *complete*

construction including supplying of materials. The original contract of May 1965 states that the price of the "SILVER CLOUD" is "$27,750 plus extras". Therefore, the only interpretation of the October agreement is that it is a modification of the prior contract subject to all the terms not modified. Thus plaintiff's argument can only concern a dispute arising out of the original contract.

vene the provisions of the statute. Obviously, the provision does not conflict with the statute since the section specifically allows the parties to determine when title shall pass.

Plaintiff further alleges that title to future goods passes to the buyer when they are "shipped, marked or otherwise designated by the seller as goods to which the contract refers," under U.C.C. § 2-501(1) (b). This argument is erroneous. The Section states nothing as to passing of title; it only sets forth the manner in which identification of the goods to the contract will be made, thus giving the buyer a "special property" and an insurable interest in the goods. These are not the equivalent of placing title in the buyer. U.C.C. § 2-401(1) provides that title cannot pass prior to identification; it does *not* provide that title must pass once the goods are identified. Therefore, under these provisions, plaintiff has not established that title has passed and, accordingly, he has shown no jurisdiction for a petitory suit.

Plaintiff further states that the contract for extras must be considered as a contract independent of the agreement of May 24, 1965, and that since plaintiff has paid the original purchase price of $27,750.00 he is entitled to "SILVER CLOUD". The contract provides, however, that the price of the sloop is $27,750.00 *plus extras*. Even though this was left to future agreement, according to plaintiff, this does not mean that the "plus extras" term is not a part of the contract. Indeed, § 2-305 of the U.C.C. provides that a contract for sale can be concluded even though the price is not settled. The agreement of October 1965 can only be considered as a modification of the original contract under U.C.C. § 2-209. It would be highly inaccurate to consider a contract for the extras to be considered separately from the contract of sale. Further, Clause 3 of the original agreement provides that title shall not pass until the full price is paid including "any extra or additional charges." It would be patently incorrect to conclude that the parties did not contemplate the cost of extras as part of the original contract.

Plaintiff makes much of a letter sent to him by defendant's president on June 23, 1966. He claims that the letter recognizes that the title is in him. The letter, in essence, indicates only that defendant recognizes plaintiff's right to possession, but only upon payment of the balance due plus wharfage fees. No mention is made of title nor can the letter be construed as an admission that title has passed.

Plaintiff also relies on defendant's willingness to "repurchase" the vessel as an indication that title has passed. This can just as readily be construed as an attempted settlement by defendant to negate the need for litigation, and as merely an offer by defendant to return plaintiff's down payment. Since the facts are as easily interpreted in this manner and since all of the other facts indicate that title has not passed, I cannot find on this alone that plaintiff has title.

Defendant's refusal to accept payment by check has no consequence in determining this motion. Under U.C.C. § 2-511, the seller may refuse payment by check provided he gives the purchaser a reasonable time to procure legal tender. No showing has been made by plaintiff that a reasonable time was not given. Further, this would have no effect on this motion but might be a factor to be considered on plaintiff's trial of the breach of contract action.

For the foregoing reasons, the relief requested by plaintiff must be denied. Plaintiff has failed to show that there is admiralty jurisdiction over a maritime claim. This decision is not to be interpreted as a holding that the Court lacks diversity jurisdiction nor that plaintiff has no cause of action for breach of contract. No decision is reached as to these contentions. The motion for possession of the vessel is denied.

It is so ordered.