386 So.2d 247 (1980)
Robert L. RICHWAGEN, Appellant,
v.
Gregory LILIENTHAL, Appellee.
No. 79-139.
District Court of Appeal of Florida, Fourth District.
July 2, 1980.
Rehearing Denied August 11, 1980.
James W. Nowlin, Jr., of Nowlin & Adams, P.A., Delray Beach, for appellant.
Frank B. Kessler of the Law Offices of Bennett S. Cohn, Lake Worth, for appellee.
GLICKSTEIN, Judge.
This is a timely appeal from an amended final judgment of replevin entered against appellant, who was the plaintiff in the trial court, by which judgment appellant was held not to be entitled to possession of a twenty-seven-foot (27 ft.) Whitehawk boat and was assessed with attorneys' fees for appellee and costs. We reverse.
*248 The trial court made the following findings which are recited in the amended final judgment:
1. Plaintiff, Robert L. Richwagen, purchased the boat in question from one Mack Wilson in 1974 for the sum of $4,500. Mack Wilson gave a receipt and signed a transfer of ownership of the registration form and on the title certificate. The plaintiff, however, did not take the title certificate to the Florida Department of Natural Resources to have a new title issued in his name, and this was never done by the plaintiff.
2. On or about January 31, 1975 the plaintiff took the boat in question to Galligan's Lakeside Marina, South Dixie Highway, Hypoluxo, Florida, and entered into an oral agreement to leave his boat at the yard for a monthly payment of $25 per month. The plan was to leave the boat there so Mr. Richwagen could work on it from time to time. According to Mr. Galligan, this boatyard attracts a number of "do it yourself people," and on a few occasions Mr. Richwagen was in the yard doing work on his boat. The boatyard filled out a card showing Mr. Richwagen's name, address and telephone number and noted that he was to pay $25 per month.
3. Mr. Richwagen made a few payments over a period of time, but at no time were they regularly paid. Mr. Richwagen stated that at one time he thought he did not have to make rent payments because the boat had been damaged as a result of the negligence of the boatyard. The boatyard people, however, denied that they had been negligent, or that they had made any arrangement to abate the payments.
4. On May 11, 1977, Nancy Galligan, of the marina, wrote to Ortho B. Clark, Chief of the Bureau of Boat Registration, Department of Natural Resources, and asked for information on selling various boats. One of the boats she listed had the following notation. "FL 0789 RICHWAGEN."
5. On May 17, 1977, Mr. Clark answered the letter of the marina, and explained how to sell boats under Florida Statute 85.031, specifically listing the boat in question as being titled in the name of Mack Wilson, 7931 S.W. Tenth Street, North Lauderdale, Florida.
6. On May 21, 1977 the marina sent a letter to Mack Wilson at the above address, which letter was returned unclaimed.
7. On June 8, 9 and 10, 1977 the following notice was published in the Palm Beach Post, a newspaper published in Palm Beach County.

 No. 605851: The following boats are being sold for
 back storage and repair bills at Galligan's Lakeside
 Marina, 7848 S. Dixie Highway, Hypoluxo, Fl.
 FL 9398 AA FL 3986 AH
 FL 2012 S FL 4116 AN
 FL 5554 AT FL 0789 S
 Published June 8, 9, 10, 1977

This notice was also posted in the following public places:
The South County Courthouse Annex
The Boynton Laundromat
The Marina itself
8. On June 21, 1977 a letter was received from Mr. Clark of the Department of Natural Resources re an application of title for the boats, and setting forth how to apply for a title under Florida Statute 85.031.
9. Subsequently, in a private transaction, the marina sold the boat in question to the defendant, Mr. Lilienthal, who was a bona fide purchaser for value, for a trade-in of some engines and some money. The marina said that the sale was being conducted under Florida Statute 85, and the defendant has had possession of the boat since the date he purchased the same from the marina.
10. In October 1977 the plaintiff, Robert L. Richwagen, learned that the boat was no longer in the boatyard and inquired of its whereabouts. The plaintiff had not been informed of any of the attempts to sell the boat, nor had he received any notices that the boat was being sold.
11. The plaintiff filed a suit for replevin on October 21, 1977.
12. An order to show cause was issued to the defendant on October 24, 1977, which *249 was heard by the Court on November 15, 1977.
13. The Court as a result of the hearing on November 15, 1977, issued an order dated December 9, 1977 leaving possession of the boat in the defendant.
14. At a subsequent hearing, the plaintiff presented testimony of an attorney as to a reasonable attorney's fee, and the Court found that the defendant was entitled to recover attorney's fees from the plaintiff under Florida Statute 78.20.
Based upon the foregoing findings, the trial court made the following conclusions:
1. That the plaintiff is not entitled to possession of the vessel in question and shall take nothing from the defendant and the defendant shall go hence without day.
2. That the plaintiff is found to be indebted to the defendant in the sum of $1,500 being reasonable attorney's fees for the representation of the defendant's attorney in this cause, for which sum let execution lie.
3. That the plaintiff shall pay to the defendant the sum of $64, being the cost of per diem for deposition of plaintiff, sheriff's service for trial subpoenaes, and witness fees and mileage, for which sum let execution lie.
Appellant's first point is multifaceted in that he argues the trial court erred in concluding the marina was a warehouseman; that even if it was, no warehouseman's lien existed to warrant the sale to appellee; and that, accordingly, appellee was not a bona fide purchaser under the Uniform Commercial Code.
Our first obligation is to determine whether the evidence supports the foregoing findings of the trial court.
We have no difficulty in determining that there was competent evidence for the trial court to conclude the marina was a warehouseman. That term is defined in Section 677.102(1)(h), Florida Statutes (1975), as "a person engaged in the business of storing goods for hire." A marina certainly stores boats and in our opinion, boats are "goods" within the definition in Section 677.102(1)(f), Florida Statutes (1975):
"Goods" means all things which are treated as movable for the purposes of a contract of storage or transportation.
In Paumier v. Barge BT 1793, 395 F. Supp. 1019, 1029 (E.D.Va. 1974), the court said:
Within the last decade a number of courts have determined that ships are "goods" within the meaning of the Uniform Commercial Code. Fireman's Fund American Insurance Co. v. Boston Harbor Marina, Inc., 406 F.2d 917, 919 (1st Cir.1969); R.C. Craig, Ltd. v. Ships of Sea, Inc., 345 F. Supp. 1066 (S.D.Ga. 1972); Silver v. Sloop Silver Cloud, 259 F. Supp. 187 (S.D.N.Y. 1966). See UCC § 2-105(1); Fla. Stat. § 672.2-105(1).
We find no distinction between boats and ships in determining what is meant by "goods."[1] Our problem lies in the absence of any warehouse receipt in this case having been issued by the marina to appellant. A warehouse receipt is defined in Section 671.201(45), Florida Statutes (1975) as:
... a receipt issued by a person engaged in the business of storing goods for hire.
Such document need not be in any particular form. Section 677.202(1), Florida Statutes (1975). Its significance lies in the principle that a warehouseman's lien is expressly dependent upon such document. Section 677.209(1), Florida Statutes (1975), provides in part:
A warehouseman has a lien against the bailor on the goods covered by a warehouse receipt or on the proceeds thereof in his possession for charges for storage *250 or transportation (including demurrage and terminal charges), insurance, labor, or charges present or future in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law... .
While there are no Florida cases directly on point and a general dearth of authority on the subject, the language of the statute is plain. One New York trial court in Dathar Corp. v. Lemkin, 14 U.C.C. Reporting Service 1207, held:
With respect to defendant's claim that he has a warehouse lien, that lien is statutory and pursuant to UCC § 7-209 is only available upon goods for which a warehouse receipt has been issued. No claim is made that such a receipt was ever issued by defendant.
The trial court in this case, while it did not expressly do so, apparently concluded that a card in the marina's file, which is part of the supplemental record on appeal, was a "warehouse receipt." The subject card contains appellant's name, address and phone number, a description of the boat and the date it was placed in storage, the monthly charge by the marina and the record of appellant's payments in 1975. It is described in paragraph 2 of the amended final judgment.
We are of the opinion that the subject card is not a warehouse receipt issued[2] to appellant but is a bookkeeping or office file card for the marina's internal use.
With such break in the chain and the absence of any warehouseman's statutory lien, the subsequent sale to appellee by the marina, ostensibly pursuant to Section 677.210(1), Florida Statutes (1975), would not sustain, under the Uniform Commercial Code, a judgment for appellee.[3]
Contained in the same file in which the marina's bookkeeping card appears is an invoice to appellant dated June 1977 with the notation "Bill sent June 1977," and the following information:

 Previous balance due $540.80
 Storage 175.00
 Services (for moving, reblocking
 and pumping the boat) 65.00
 Tax 7.60
 ______
 Total Amount $738.40[4]
*251 The marina's invoices for labor or services performed upon the boat support a lien by the marina under Section 713.58(1), Florida Statutes (1975), which provides in part:
713.58 Liens for labor [or] services on personal property.
(1) [Liens shall exist] in favor of persons performing labor or services for any other persons, upon the personal property of the latter... .
Such lien for labor or services on personal property appears in Part II of Chapter 713, Florida Statutes (1975) and may be enforced by a sale of the personal property pursuant to Section 85.031, Florida Statutes (1975). However, unlike Section 677.210, Section 85.031 only permits a public sale and does not specify that a bona fide purchaser at such sale will prevail over the claims of a lienee notwithstanding non-compliance by the lienor with the procedures set forth in the statute.
In the present case, the sale to appellee was private and not in compliance with Section 85.031.
To summarize our conclusion upon the first point raised by appellant, we conclude that the marina was a warehouseman but did not perfect its statutory lien for storage by the issuance of a warehouse receipt, and that in the absence of a warehouseman's lien, the marina had nothing to enforce by means of private sale pursuant to Section 677.210, Florida Statutes (1975). We further conclude that while there may have been evidence to support a lien under Section 713.58, there was non-compliance with the procedures required by Section 85.031, Florida Statutes (1975), so that appellee is not entitled to possession of the boat.
Accordingly, we reverse upon this point and remand for entry of judgment for appellant upon his complaint and for trial or other disposition upon appellee's counterclaim.
The second point raised by appellant is that the trial court erred in awarding attorney's fees to the defendant. Because we reverse on the merits, we must also reverse the award of attorney's fees.
REVERSED and REMANDED.
DOWNEY and HURLEY, JJ., concur.
NOTES
[1] Fireman's Fund American Ins. Co. v. Boston Harbor Marina, 406 F.2d 917 (1st Cir.1969): In view of the broad statutory definition of "goods," we do not think it can be said that a yacht, as distinguished from other personal property, falls outside the statutory ambit.[1]

[1] "Goods" means all things which are treated as movable for the purposes of a contract of storage or transportation. Mass.G.L. ch. 106 § 7-102(f).
[2] We concur with the conclusion that implicit in "issuance" is delivery. In Vannett v. Reilly-Herz Automobile Co., 42 N.D. 607, 173 N.W. 466 (1919), the court described a warehouse receipt as a:

[w]ritten acknowledgment by the warehouseman that he has received and holds the goods therein described for the person to whom it is issued. (Emphasis added).
Here, there is no evidence of issuance to appellant of any receipt.
[3] The significance here of such a sale in enforcement of a warehouseman's lien pursuant to Section 677.210, Florida Statutes (1975), is twofold. First, the sale may be private and more important:

(5) A purchaser in good faith of goods sold to enforce a warehouseman's lien takes the goods free of any rights of persons against whom the lien was valid, despite noncompliance by the warehouseman with the requirements of this section.
Prior to January 1, 1967, the effective date of the Uniform Commercial Code in Florida, Section 678.27, Florida Statutes (1965), provided in part:
A warehouseman shall have a lien on goods deposited or on the proceeds thereof in his hands, for all lawful charges for storage and preservation of the goods.
There was no mention in the section of a warehouse receipt.
Further, the sale is of no assistance to appellee under a general theory of bailment as the bailee/marina was not authorized by the bailor/appellant to sell the boat. 8 Am.Jur.2d, Bailments § 86.
[4] An earlier invoice, dated January 3, 1977, reflects $540.80 was owed at that time, of which amount $170 was for moving, reblocking and pumping the boat. Accordingly, the total sum apparently due in June 1977 for services performed on the boat was $235.

We consider the invoices in the marina's file upon the assumption that they were considered by the trial court, this court having ordered on May 21, 1979 that the record be supplemented with all exhibits "admitted at the trial." The subject file in which the invoices appear is part of that supplemental record, notwithstanding there is affixed to the envelope in which the file was sent a card bearing the initials of the trial judge and the legend "For Identification as Ct. exhibit A."