NIMMONS, Judge.
Boyd, plaintiff below, appeals from a directed verdict[1] in favor of defendant/ap-pellee Panama City Boat Yard in appellant’s suit for breach of contract, conversion, and breach of appellee’s duty as a bailee. We reverse.
Appellant entrusted his boat to appellee for repairs. While in appellee’s custody, the boat sank. Shortly after appellee recovered the boat from the bottom, appellee sent to appellant a repair bill in the sum of $6,446 for presinking repairs. Subsequently, appellant received an estimate from ap-pellee as to the cost of remedying the damage occasioned by the boat’s sinking. Ap-pellee proceeded to sell it in a nonjudicial sale pursuant to Section 85.031(2) Florida Statutes, (1981)[2] to recoup charges for pre-sinking repairs and storage. At trial appellant acknowledged that he had been notified of the impending sale and decided, after consultation with his attorney, not to protest or attempt to impede the sale.
Appellant’s suit, which was instituted two years after the sale, alleged among other things that the agreement between the parties provided that appellant was to be consulted and permitted to personally inspect the boat before it was taken out of dry storage. Appellant alleged that appel-lee breached the agreement by placing the boat in the water without first notifying him. Accordingly, he claimed that any pre-sinking repairs were rendered of no value to him due to the subsequent sinking of the *1060 boat. Appellee allegedly breached its duty as bailee by its failure to properly care for appellant’s boat. Appellant’s third count was for conversion.
The trial court’s judgment for appellee was based upon the ground that, since all of appellant’s claims related primarily to the boat, appellant had waived any right of action he might otherwise have had to proceed against appellee by not asserting his rights when notified of the impending sale. We disagree.
At issue is what, if any, preclusive effect a nonjudicial sale conducted pursuant to Section 85.031(2) has upon a property owner’s legal claims arising out of the underlying agreement or transaction between the property owner and lienor.
In order to give practical effect to the statute, it should be read to confer at least some protection to the lienor and a party purchasing from him. For example, in a properly conducted sale under the statute, the purchaser takes good title. Cf. Lake v. Irrgang, 391 So.2d 735 (Fla. 4th DCA 1980); Richwagen v. Lilienthal, 386 So.2d 247 (Fla. 4th DCA 1980). Additionally, the lienor/seller would certainly be protected from criminal prosecution for his statutorily-authorized actions.
We believe, however, that the trial court applied the statute too broadly. The language of the statute suggests no intent to impose additional barriers or limitations upon the claims brought by appellant, and we know of no authority supporting such an interpretation. Additionally, we are unconvinced that the trial court’s result is necessary to effectuate the statute. We, therefore, hold that appellant’s claims predicated upon contract and bailment theories survived the sale. As to the conversion count, the directed verdict in appellee’s favor was likewise improper. A party exercising self-help under Section 85.-031(2) does so at his peril. While the sale passes ownership of the property, it does not establish the legitimacy of the underlying debt or of the lienor’s conduct.
While not on all fours with the instant case, we find our opinion in Law Offices of Harold Silver, P.A. v. Farmer’s Bank & Trust Co., 498 So.2d 984 (Fla. 1st DCA 1986) to be instructive. In Silver a writ of execution had issued pursuant to a judgment in favor of Silver. Farmer’s Bank intervened in the pending execution sale, claiming a superior interest in a certain automobile. In a proceeding held pursuant to Sections 56.16 through 56.18, Florida Statutes, which provide for resolution of such disputes, Silver prevailed and was awarded 20 percent of the value of the automobile in accordance with Section 56.-18’s provision: “If the verdict is in favor of plaintiff and it appears that the claim was interposed for delay, plaintiff may be awarded reasonable damages, not exceeding 20 percent of the value of the property claimed.” At issue was whether such proceeding constituted Silver’s exclusive remedy and, therefore, barred Silver’s action for malicious prosecution based upon the same conduct. This court answered in the negative, holding that statutes are to be construed in harmony with the common law whenever possible, and that a statutory intent to alter the common law must be clearly expressed. In the instant case, appellant’s claims are cognizable under the common law.[3] We find nothing in Section 85.031 or elsewhere which indicate an intent that a nonjudicial sale under that section cuts off the otherwise available causes of action such as those asserted by this appellant.
Accordingly, we reverse and remand for further proceedings consistent with this opinion. In view of our reversal on the above grounds, we find it unnecessary to address appellant’s remaining points.
SMITH, C.J., and ERVIN, J., concur.

. After appellant’s witnesses had completed their testimony, the trial court announced that it was entering a “summary judgment." Summary judgment being a pretrial mechanism, the appropriate procedure at this stage of the proceeding is entry of a directed verdict, and we treat the judgment as rendered pursuant to a directed verdict. Cf. Henriquez v. Publix Super Markets, Inc., 434 So.2d 53 (Fla. 3d DCA 1983). Appellant also complains that the trial court sua sponte entered its “summary judgment.” While we find it unnecessary to decide the question, we note that entry of a directed verdict in the absence of a motion has been held to be permissible. Peterson v. Peterson, 400 F.2d 336 (8th Cir.1968). Florida case law suggests, without squarely facing the issue, that such a procedure is permissible, at least in some instances. Pitt v. Abrams, 103 Fla. 1022, 139 So. 152 (1931); Smith v. Standard Guaranty Insurance Co., 435 So.2d 848 (Fla. 2d DCA 1983).

. Section 85.031(2) provides in pertinent part: 85.031 Remedies against personal property only; all lienors.—
******
(2) BY SALE WITHOUT JUDICIAL PROCEEDINGS. When any person entrusts to any mechanic or laborer, materials with which to construct, alter or repair any article of value, or any article of value to be altered or repaired, and if the article is completed and not taken away, and the reasonable charges not paid, such mechanic or laborer may sell it after 3 months from the time such charges become due at public auction for cash but before the sale the mechanic or laborer shall give public notice of the time and place thereof, by notices posted for 10 days in 3 public places in the county, one of which shall be at the courthouse, and another in some conspicuous part of his shop or place of business. The proceeds of the sale, after payment of charges for construction or repair with the costs of the sale, shall be deposited with the clerk of the circuit court for the county, if the owner is absent, where they shall remain subject to the order of the person legally entitled thereto. The clerk shall be entitled to receive 5 percent on the proceeds for the care and disbursement thereof. * * *
The sale took place in 1983. The Legislature has since provided, via Chapter 85-252, section 5, Laws of Florida, that any nonjudicial sale of an unclaimed vessel held for unpaid costs of repair be conducted according to the provisions of Section 328.17, Florida Statutes. The Legislature has not, however, chosen to amend Section 85.031.

. See e.g. 11 Fla.Jur.2d Contracts Section 218; 5 Fla.Jur.2d Bailments Section 9; 12 Fla.Jur.2d Conversion and Replevin Section 9.