United States Court of Appeals,

Fifth Circuit.

No. 91–3375.

J.A.R., INC., Plaintiff–Appellee,

v.

M/V LADY LUCILLE, the Dinner Cruise/Excursion Vessel, etc., et al., Defendants–Appellants,

Network Marine, Inc., Defendant–Appellant.

June 19, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before WISDOM, SMITH and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This suit—the result of a contract dispute between ship purchaser J.A.R., Inc. ("J.A.R.") and shipbuilder Network Marine, Inc. ("Network")—is an action brought by J.A.R. to obtain title to or possession of The Lady Lucille, and for security pending arbitration under Title 9 of the United States Code. The United States District Court for the Eastern District of Louisiana granted J.A.R.'s motion for summary judgment and entered judgment vesting title to The Lady Lucille in J.A.R., and Network now appeals that judgment. Finding an absence of both admiralty and diversity jurisdiction, we reverse and render judgment dismissing J.A.R.'s complaint for lack of subject matter jurisdiction.

I

A

In August 1990, Network and its president, Wilton P. Dugas, entered into a contract with J.A.R. for the former to construct an aluminum hull vessel for use as a dinner cruise or excursion boat and deliver that vessel to Network's Louisiana shipyard. J.A.R. agreed to supply much of the vessel's equipment, including engines, gears, generators, air conditioners, electronic equipment, and furnishings. Network agreed to build the vessel according to contract plans and specifications, and to install the equipment furnished by J.A.R. The contract provided for the application of Louisiana

law and for arbitration of contract disputes according to the rules of the American Arbitration Association.

The base contract price was $267,000, with a twenty percent downpayment and two twenty-percent progress payments. The remaining forty percent, after adjustment for change orders, was due upon issuance of a Temporary Certificate of Inspection by the United States Coast Guard and was to be paid prior to delivery of the vessel. J.A.R. paid the first three installments as scheduled—allegedly leaving a $107,000 balance on the contract price—and supplied approximately $70,000 worth of equipment, which was installed by Network. As the vessel (The Lady Lucille) neared completion, J.A.R. determined that The Lady Lucille did not meet the contract specifications. According to J.A.R.'s marine surveyor's report, "the basic vessel [was] sound, and probably suitable for some type of commercial use, although ... not suited for dinner cruise service in an upscale environment." J.A.R. refused to accept delivery when, after issuance of the Coast Guard Temporary Certificate of Inspection, Network tendered The Lady Lucille. The contract dispute is presently in arbitration.

B

Alleging both admiralty and diversity jurisdiction, J.A.R. filed this suit—an action to obtain title to or possession of The Lady Lucille—in the United States District Court for the Eastern District of Louisiana. J.A.R. alleges in its complaint that the suit is an action for security pending arbitration under Title 9 of the United States Code.

Seeking to execute on a state court judgment for materials used in construction of the vessel, Network's creditor, Industrial Metals of the South, Inc. ("Industrial Metals"), moved to intervene as a plaintiff-lien claimant against The Lady Lucille, and that motion was granted. Since Industrial Metals is a Louisiana corporation, as is defendant Network, Industrial Metals' intervention destroyed diversity jurisdiction between the parties, thereby leaving admiralty as the only basis for jurisdiction.

Network then moved the district court to dismiss this suit for lack of subject matter jurisdiction, and the court, ruling that admiralty jurisdiction is appropriate, denied that motion.

J.A.R. and Network then filed cross-motions for summary judgment, each party seeking to have title to The Lady Lucille declared to rest exclusively in its own name. On April 10, 1991, the district court granted J.A.R.'s motion for summary judgment and entered judgment vesting title to The Lady Lucille in J.A.R. Only Network appeals.

II

To invoke admiralty jurisdiction in a contract dispute, the underlying contract must be a maritime contract.[1] A maritime contract is "[a] contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment[.]" *Thurmond v. Delta Well Surveyors,* 836 F.2d 952, 954 (5th Cir.1988), *quoting* 1 E. JHIRAD, A. SANN, B. CHASE & M. CHYNSKY, BENEDICT ON ADMIRALTY, § 183, at 11–6 (7th ed. 1985); *see Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538 (5th Cir.1986) (holding that nature and character of contract determines whether it may be characterized "maritime"). Not every contract that touches incidentally on maritime activities is a maritime contract; for maritime character to attach, " "there must be a direct and proximate juridicial link between the contract and the operation of a ship....' " *Theriot,* 783 F.2d at 538, *quoting* JHIRAD, *supra.* "[A]dmiralty will not entertain suits where the substantive rights of the parties flow from a contract to sell or contract a vessel." *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht,* 625 F.2d 44, 47 (5th Cir.1980).

---

[1] *See Kuehne & Nagel v. Geosource, Inc.,* 874 F.2d 283, 290 (5th Cir.1989). It is well established that a contract to build a ship is not an admiralty contract. *See Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56, *reh'g denied,* 366 U.S. 941, 81 S.Ct. 886, 6 L.Ed.2d 852 (1961); *see also East River S.S. Corp. v. Transamerica DeLaval,* 476 U.S. 858, 873 n. 7, 106 S.Ct. 2295, 2303 n. 7, 90 L.Ed.2d 865 (1986) ("contracts relating to the construction of or supply of materials to a ship are not within the admiralty jurisdiction") (citation omitted); *Employers Ins. of Wausau v. Suwannee River Spa L.,* 866 F.2d 752, 759 n. 3 (5th Cir.) ("Contracts relating to the construction of vessels are not considered maritime contracts. *Consequently, claims for breach of such contracts are not within the admiralty jurisdiction.")* (emphasis added) (citations omitted), *cert. denied,* 493 U.S. 820, 110 S.Ct. 77, 107 L.Ed.2d 43 (1989).

Although the district court found admiralty jurisdiction, this court must examine the basis of subject matter jurisdiction sua sponte when it appears at all questionable. *See Giannakos v. M/V Bravo Trader,* 762 F.2d 1295, 1297 (5th Cir.1985) ("United States District Courts and Courts of Appeals have the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking."). The district court based its finding of admiralty jurisdiction on this court's holding in *Jones v. One Fifty Foot Gulfstar,* 625 F.2d 44 (5th Cir.1980). The facts in *Jones*—an action brought by a purchaser against a shipbuilder's creditor who seized an almost completed custom yacht when the shipbuilder went out of business—do not parallel those in the case before us: an action brought by a purchaser against a shipbuilder—parties in a contractual relationship—arising out of their contractual dispute. *See Jones,* 625 F.2d at 47 (5th Cir.1980).[2] That is, the case before us is essentially "a pure and simple dispute between a vessel manufacturer and buyer concerning a contract for construction and delivery of a vessel." *Id., distinguishing Richard Bertram & Co. v. The Yacht, Wanda,* 447 F.2d 966 (5th Cir.1971).

The district court distinguished this case from *The Wanda* on the grounds that all of "the problems relating to interpretation of the contract regarding price, breach, and extras have been expressly referred to arbitration,"[3] and characterized what remains as purely a petitory action for title. However, *The Wanda* did involve a "possessory or petitory" action, which was brought in admiralty by a shipbuilder to try title to a yacht when the purchaser failed to make a large contract payment.

---

[2]The action in *Jones* was brought by a purchaser who had already executed a sales agreement, chosen custom options, installed additional electronic gear, and paid ninety-five percent of the purchase price. After the seizure, the purchaser brought suit in admiralty, alleging petitory, possessory, and tort claims. This court found admiralty jurisdiction because the plaintiff alleged ownership of the vessel, right to immediate possession, an unlawful taking and detention by defendant, and damages to the vessel. *See Jones,* 625 F.2d at 47. The court distinguished the case from *The Wanda,* 447 F.2d 966 (5th Cir.1971), characterizing *The Wanda* as a contract dispute over construction and delivery of a vessel. *See id.*

[3]Record on Appeal vol. 2 at 000242, *J.A.R., Inc. v. The Lady Lucille,* No. 91–3375 (5th Cir. filed May 2, 1991) ["Opinion"]; *id.* at 000243: "In sum, the relief sought by J.A.R. does not require interpretation of a non-maritime contract, and this Court has admiralty jurisdiction to try title to the Vessel."

This court declined jurisdiction in *The Wanda,* stating that:

> A maritime contract is one which concerns transportation by sea, relates to navigable waters and concerns maritime employment....  [W]hether this suit is viewed as one to enforce a security interest or mortgage on a vessel, a suit to try  or quiet title, a suit for breach of a contract of sale, or a suit upon a contract to construct a vessel, it is not within the admiralty jurisdiction of this Court.

*The Wanda,* 447 F.2d at 967–68.

The only reason title over *The Lady Lucille* is at issue is that her purchaser and her builder are arguing over the terms of their contract.  Interpretation of that contract will determine who rightfully holds permanent title.  The fact that the parties have contractually agreed to pluck off the petals of this dispute and sort through them in arbitration does not change the identity of this action—that is, it does not transform a contract dispute into a maritime action.  Characterizing the dispute before us as a "petitory" action for title apart from the underlying contract dispute so that it can become "maritime" and bestow jurisdiction upon this court to determine who holds title while arbitration is in progress is, to say the least, grasping.[4]  We cannot oblige.  Accordingly, we REVERSE and RENDER judgment dismissing J.A.R.'s complaint for lack of subject matter jurisdiction.

---

[4]The district court distinguishes *Silver v. The Sloop Silver Cloud,* 259 F.Supp. 187 (S.D.N.Y.1966), reasoning that, "in that case, plaintiffs had conceded, "[T]he dispute ... is not over the title to the boat but as to how much is owed by defendant to plaintiff or by plaintiff to defendant regarding the extras.' " Opinion at 000242 (citation omitted).  In fact, *The Sloop Silver Cloud* involved an action brought by the purchaser of a ship for possession where the purchaser examined the ship and found it unsatisfactory and sought possession pending the outcome of his action.  The district court also distinguishes *The Sloop Silver Cloud* on the grounds that J.A.R. makes claim to legal title in its complaint, and, accordingly, has properly brought a possessory or petitory action pursuant to Rule D of the Supplemental Rules for Certain Admiralty and Maritime Claims.  As noted by *The Sloop Silver Cloud* court, "the right to bring a possessory or petitory suit requires [i] the existence of a maritime question ... [and] [ii] that action [must be] one to recover possession *rather than to obtain original possession." Id.* at 191.  Although this court leaves determination of the parties' title dispute to arbitration or any other forum with proper jurisdiction, we note that J.A.R. refused to accept delivery of The Lady Lucille and apparently walked into the district court without ever obtaining such possession.  Although brought under the guise of Rule D, J.A.R.'s action appears to be one for obtaining *original* possession.