Waitus D. LOCKERMAN, Plaintiff,

v.

**GLOBAL SANTA FE DRILLING CO. et al., Defendants.**

No. Civ.A. G–02–066.

United States District Court,
S.D. Texas,
Galveston Division.

July 31, 2002.

Harold Joseph Eisenman, Houston, TX, for Waitus Lockerman, plaintiff.

Michael D Murphy, Hays McConn, et al, Houston, TX, Marion E McDaniel, Jr, Locke Liddell, et al, Houston, TX, for Global Santa Fe Drilling Company, defendant.

Ronald L White, White Mackillop, et al, Houston, TX, for Crewboats, Inc., defendant.

Charles Douglas Wheat, Killeen & Wheat, Houston, TX, for Rigblast USA, LLC, defendant.

### ORDER DENYING CREWBOATS, INC.'S MOTION FOR SUMMARY JUDGMENT, DISMISSING CREWBOATS, INC.'S CROSS–CLAIM, DENYING RIGBLAST USA, INC.'S APPLICATION FOR INJUNCTION AS MOOT AND DENYING RIGBLAST USA, INC.'S MOTION FOR STAY OF JUDICIAL PROCEEDINGS AS MOOT

KENT, District Judge.

This is a personal injury lawsuit arising in admiralty wherein Plaintiff Waitus D. Lockerman ("Lockerman") seeks damages from Defendants Global Santa Fe Drilling Company ("GSFD"), CrewBoats, Inc. ("Crewboats"), Rigblast USA, Inc. ("Rigblast") and the M/V GLOMAR CR LUIGS ("LUIGS"), *in rem*, for injuries he allegedly sustained while working for Rigblast on February 1, 2001. Shortly after Lockerman filed this suit against Defendants, Crewboats filed a cross-claim against Rigblast based upon its contention that Rigblast is contractually obligated to fully cover, defend and indemnify Crewboats for any and all sums which Crewboats may become liable to pay to Lockerman in judgment or settlement of this action. Now before the Court is Crewboats's Mo-tion for Summary Judgment on its cross-claim, filed June 27, 2002. Also before the Court is Rigblast's Application for Injunction and Rigblast's Motion to Stay Judicial Proceedings, filed concurrently on July 11, 2002. After thoughtfully and carefully considering these Submissions (both of which being genuinely excellent), the Responses thereto, the relevant evidence and the applicable law, the Court hereby concludes that Crewboats's Motion for Summary Judgment is hereby respectfully **DENIED** and Rigblast's Application for Injunction and Motion to Stay Judicial Proceedings are both **DENIED** as **MOOT**.

### I.

Offshore drilling operations are huge undertakings that involve numerous entities and remarkably complex contractual relationships. The scenario giving rise to this lawsuit is a perfect example of such complexity. Global Marine CR LUIGS LIMITED ("Global Marine") and Hornbeck Offshore Services, Inc. ("Hornbeck") are both contractors for BHP Petroleum (Americas), Inc.'s ("BHP") offshore drilling operations in the Gulf of Mexico. Global Marine provides its drillship, the LUIGS, and related drilling services to BHP; and Hornbeck provides BHP with crewboat services. Both Global Marine and Hornbeck employ subcontractors. Global Marine employs GSFD[1] supply technical information and personnel for Global Marine's offshore operations; and Hornbeck employs Crewboats to provide transportation to and from the LUIGS by way of a vessel named the RIG RUNNER. Rigblast, a subcontractor to GSFD, performs industrial painting and sandblasting services aboard the LUIGS.

On the day of the incident in question, Rigblast instructed Lockerman to work as

---

**1.** The contract between Global Marine and GSFD was originally executed by Global Ma-rine and GSFD's predecessor-in-interest, Global Marine Drilling Company.

a painter aboard the LUIGS. Lockerman thereafter boarded the RIG RUNNER and was transported by Crewboats personnel to the LUIGS. While he was being transferred by a crane from the RIG RUNNER to the drilling unit, Lockerman suffered allegedly serious injuries. Consequently, Lockerman filed the instant suit against Rigblast, Crewboats, GSFD and the LUIGS, *in rem*, alleging that his injuries were caused by the negligence of the Defendants and/or by the unseaworthiness of the LUIGS.

## II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. Nevertheless, if the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691 (S.D.Tex. 1992) (noting that summary judgment is

inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## III.

The Court turns now to Crewboats's Motion for Summary Judgment on its cross-claim for indemnity, defense and insurance coverage against Rigblast. Crewboats maintains that the express language of the Master Services Agreement ("MSA") entered into by GSFD (as contractor) and Rigblast (as subcontractor) obligates Rigblast to defend and indemnify Crewboats in connection with Lockerman's claims. According to Crewboats, it is a it is a member of the "Contractor Group"—a group of entities to which Rigblast owes a duty to cover, indemnify and defend under the MSA. The Court disagrees.

### The MSA is a Maritime Contract

Because the construction of a maritime contract is governed by maritime law, *see Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538 (5th Cir.1986); *Lirette v. Popich Bros. Water Transp., Inc.,* 699 F.2d 725, 728 n. 11 (5th Cir.1983), the Court must initially determine whether the MSA between Rigblast and GSFD is maritime in nature. Whether a contract is maritime or non-maritime is not always an easy determination. *See, e.g., J.A.R., Inc. v. M/V LADY LUCILLE,* 963 F.2d 96, 98 (5th Cir.1992) (noting that not every contract incidentally touching on maritime activities is a maritime contract); *Theriot,* 783 F.2d at 538 (explaining that for maritime character to attach, "there must be a direct and proximate judicial link between the contract and the operation of the ship . . . ."). To make this determination, the Fifth Circuit employs the two-step test articulated in *Davis & Sons, Inc. v. Gulf*

*Oil Corp.*, 919 F.2d 313 (5th Cir.1990). Under *Davis*, the Court must initially consider the contract's "historical treatment in the jurisprudence" and, next, examine the specific facts of the case.. *Id.* at 316; *see also Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 (5th Cir.1992) (describing the two-step character of the *Davis* test). The second prong of the *Davis* inquiry requires the Court to consider the following six factors: (1) what does the specific work order in effect at the time of the injury provide?; (2) what work did the crew assigned under the work order actually do?; (3) was the crew assigned to work aboard a vessel in navigable waters?; (4) to what extent did the work being done relate to the mission of that vessel?; (5) what was the principal work of the injured worker?; and (6) what work was the injured worker doing at the time of the injury? *See Davis*, 919 F.2d at 316.

■ According to the Fifth Circuit, a maritime contract is "a contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment." *J.A.R.*, 963 F.2d at 98 (quoting *Thurmond v. Delta Well Surveyors*, 836 F.2d 952, 954 (5th Cir.1988)). Oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime employment, *see Theriot*, 783 F.2d at 538–39, and "even a contract for offshore drilling services that does not mention any vessel is maritime if its execution requires the use of vessels." *Demette v. Falcon Drilling Co.*, 280 F.3d 492, 500–01 (5th Cir. 2002). In light of the undisputed evidence indicating that Rigblast was providing services and equipment aboard mobile offshore drilling units pursuant to the MSA, Fifth Circuit precedent virtually compels the conclusion that the M.S.A. § is maritime in nature. *See, e.g. id.* at 501 (concluding that a contract to provide casing services aboard a jack-up drilling rig was

maritime in nature); *Lewis v. Glendel Drilling Co.*, 898 F.2d 1083, 1086 (5th Cir. 1990) (holding that a contract to provide offshore drilling services is maritime even if the contractual language does not mention vessels). Furthermore, the *Davis* factors affirm this result: Rigblast was hired to provide industrial painting and sandblasting services aboard an offshore drilling rig; Rigblast employees actually performed the tasks that the M.S.A. § described; Lockerman was injured while transferring from a vessel to a drilling rig over navigable waters; painting and sandblasting services are integral to offshore oil and gas drilling operations (the primary purpose of the rigs in question); Lockerman's principal work was as a painter; and Lockerman was performing a task incident to this work (traveling to the drilling rig to begin painting) at the time he was injured. Accordingly, all six *Davis* factors squarely point to a singular conclusion—the M.S.A. § and the injury that invoked its terms are both clearly "maritime." Therefore, because both the "historical treatment" and the "fact specific inquiry" aspects of the *Davis* test are satisfied, the Court concludes that the indemnity provision of the MSA falls squarely within a maritime contract, and is therefore governed by maritime law.

*The MSA's Indemnity Provision*

■ Express contractual indemnity agreements generally are enforceable under maritime law. *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 834 (5th Cir.1992); *Theriot*, 783 F.2d at 538 (holding that because maritime law, not state law, applied to contract between vessel owner and operator of oil lease, indemnity provision was valid); *Diamond Offshore Co. v. A & B Builders, Inc.*, 75 F.Supp.2d 676, 678 (S.D.Tex.1999) (recognizing that if a contract is governed by maritime law, a reciprocal indemnity provision in an agreement

between the owner of an offshore oil rig and a service contractor is valid). However, such clauses are only enforceable where "indemnification for an indemnitee's own negligence [is] clearly and unequivocally expressed." *Seal Offshore, Inc. v. Am. Standard, Inc.,* 736 F.2d 1078, 1081 (5th Cir.1984). An indemnity clause in a maritime contract "should not be read . . . to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Theriot,* 783 F.2d at 540 (quoting *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 333 (5th Cir.1981)).

In this case, the indemnity clause of the M.S.A. § sets out reciprocal indemnity obligations between Rigblast, as subcontractor, and the "Contractor Group." According to the precise, relevant contractual language, Rigblast is obligated to "release, protect, indemnify, defend . . . and hold Contractor Group harmless from and against any and all costs, losses, liabilities, claims, demands, causes of action, damages, penalties, judgments and awards of every kind and character" that arise in connection with Rigblast employees "on account of sickness, bodily injury, death or damage to or loss of property." Thus, the MSA's indemnity clause clearly and unequivocally expresses Rigblast's obligation to defend and indemnify the "Contractor Group." Thus, if Crewboats falls within the "Contractor Group" (and Crewboats maintains that it does), Rigblast must indemnify and defend Crewboats in connection with Lockerman's claims.

*Crewboats is not a Member of the Contractor Group*

■ Nevertheless, the Court cannot conclude that Crewboats falls within the defined scope of the Contractor Group. The M.S.A. § provides that:

(a) "Contractor Group" means the following persons and entities, individually and collectively:

1. [GSFD], its parent, subsidiary, affiliated, associated companies and co-venturers;

2. [GSFD]'s other contractors and other parties contracting with GSFD (excepting [Rigblast] and [Rigblast]'s subcontractors);

3. Any customer or client or other entity for whom [GSFD] is performing services and the co-venturers, other contractors and subcontractors of such customer or client or other entity.

Crewboats argues that because (1) Crewboats is a subcontractor for Hornbeck; (2) Hornbeck is a contractor for BHP; and (3) BHP is an "customer or client or other entity for whom [GSFD] is performing services," Crewboats is therefore a "subcontractor of such customer" and therefore included in the Contractor Group. This definitional analysis fails, however, because Global Marine, *not* BHP, is the "customer . . . for whom GSFD is performing services."

It is obvious that GSFD itself is included in the Contractor Group. Furthermore, it is quite clear that Global Marine, as a "customer or client or other entity for whom [GSFD] is performing services," is a Contractor Group member. However, although GSFD performs services for its direct customer, Global Marine, GSFD does not directly provide services to BHP (because BHP is a direct customer of Global Marine, not GSFD). Simply put, BHP is actually a "customer of a customer" of GSFD; and while GSFD is undoubtedly performing services that ultimately benefit BHP, such services are being provided circuitously and indirectly, at best. Moreover, because BHP is a "customer of a customer" of GSFD, Crewboats is a

"subcontractor of a contractor of a customer of a customer" of GSFD. The precise language of the M.S.A. § simply cannot be stretched to such an extreme. In short, such an attenuated relationship simply cannot serve as the basis for including Crewboats in the Contractor Group.

This result makes both practical and legal sense. If the Court was to extend the MSA's indemnity provision so far as to encompass claims against Crewboats (an entity that is not in contractual privity with either party to the MSA), Rigblast's indemnification obligations would exceed comprehension. Certainly, when Rigblast and GSFD entered into the MSA, they intended to extend their reciprocal indemnity obligations to the contractors and subcontractors in direct contractual privity to themselves (i.e. Global Marine, any subcontractors hired by Rigblast)—but the Court finds it impossible to accept that they meant to encompass every entity that provides services in the vicinity of the drilling rig at issue.

Therefore, because Crewboats does not belong to the Contractor Group, the MSA's indemnity provision does not unequivocally and clearly obligate Rigblast to defend and indemnify Crewboats in connection with Lockerman's claims. As such, the indemnity provision is unenforceable with respect to Crewboats, as a matter of general maritime law. Moreover, because the MSA's reciprocal insurance provisions also apply to the Contractor Group only, the insurance provisions are inapplicable to Crewboats as well. Accordingly, Crewboats's Motion for Summary Judgment on its cross-claim is hereby **DENIED;** and because the MSA's indemnity and insurance provisions are inapplicable to Crewboats, as a matter of law, Crewboat's cross-claim for contractual insurance coverage, defense and indemnity pursuant to the M.S.A. § is hereby **DISMISSED WITH PREJUDICE.** A final judgment reflecting such dismissal will be entered in due course.

### IV.

Finally, the Court turns to Rigblast's Application for Injunction and Rigblast's Motion for Stay of Judicial Proceedings. In these Submissions, Rigblast seeks an Injunction compelling Crewboats to arbitrate its cross-claim for insurance coverage, defense and indemnity pursuant to the MSA's arbitration clause and an Order staying the remainder of this litigation pending resolution of the requested arbitration. Rigblast's requested relief is no longer germane, however, because the Court has dismissed Crewboats's cross-claim. As such, Rigblast's Application for Injunction and Motion for Stay of Judicial Proceedings are both hereby **DENIED** as **MOOT.**

**IT IS SO ORDERED.**