# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 6, 2010

Lyle W. Cayce
Clerk

No. 09-40942

GULF COAST SHELL AND AGGREGATE LP; RICHMOND MATERIAL COMPANY,

Plaintiffs - Appellees

v.

CHARLES T. NEWLIN, Individually,

Defendant - Appellant - Appellee

and

QUIMICOS AMIEX, S A DE C V, appearing solely in its capacity as a person who asserts a right of ownership interest in the Dredge La Concha,

Claimant - Appellant

v.

INTERNATIONAL FIDELITY INSURANCE CO.,

Intervenor - Appellant

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before JOLLY, DeMOSS, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

No. 09-40942

Who has the best claim to La Concha?  Well, we do not know the answer, but we do know that the answer cannot be provided by the courts of admiralty.

The claims presented in this appeal arise from a failed oyster-dredging venture between appellee Gulf Coast Shell and Aggregate LP ("Gulf Coast") and appellant Charles Newlin ("Newlin").  Gulf Coast sued the oyster dredge La Concha *in rem*, under Admiralty Rule D, for possession and to try title to the dredge.  It sued Newlin *in personam*, for breach of contract, breach of fiduciary duty, and wrongful conversion.  The district court issued judgment in favor of Gulf Coast.  Newlin challenges the existence of admiralty jurisdiction and the merits of the district court's judgment.  We hold that the district court did not have admiralty jurisdiction over this suit because Gulf Coast has not asserted a legal claim to the dredge; because the contract between Gulf Coast and Newlin is not a maritime contract; and because the torts alleged by Gulf Coast are not maritime torts.[1]  We therefore vacate the judgment of the district court and remand the case to the district court for entry of an order dismissing Gulf Coast's claims for lack of jurisdiction.

I.

Newlin, along with Roy Beken ("Beken") and Dean Koy ("Koy"), intended to begin an oyster shell dredging venture in Mexico and to distribute the shell aggregate in the United States.  Newlin formed a Mexican corporation, Grupo Triad Meridian ("Grupo"), for the purpose of locating oyster shell deposits off the coast of Mexico and obtaining a concession from the Mexican government to dredge the deposits.  Koy and Beken both purchased shares in Grupo from Newlin. Later, Koy and Beken formed a limited partnership, Gulf Coast, for the purposes of distributing the oyster shells from Grupo's dredging efforts for sale in the United States, and providing funds for a dredge.  Koy and Richmond

---

[1] For purposes of simplification, we refer throughout this opinion to the Defendant-Appellant as "Newlin" and to the Plaintiffs-Appellees collectively as "Gulf Coast."

No. 09-40942

Materials Company ("Richmond"), which Beken controls, each have a 49% limited partnership interest in Gulf Coast. In March 2005, Beken purchased an additional interest in Grupo from Newlin.[2] At this point, Beken and Newlin each owned 24.75% of Grupo, and Koy owned 44.5%.

Newlin, Beken, and Koy agreed that Gulf Coast would be the exclusive U.S. distributor for the oyster shells. When a suitable dredge (La Concha) was located, Gulf Coast paid the purchase price of $300,000. However, the seller prohibited the sale of the dredge to a U.S. entity, so the parties agreed that the purchase agreement would list Industrias Pasmoso S.A. de C.V. ("Industrias"), a Mexican entity controlled by Newlin, as the buyer. Although they dispute the reasons for doing so, the parties agree that they intended to leave title to the dredge with Industrias for the time being, and to transfer the title to Grupo after it had been refurbished and appraised at a higher value.

Various entities, including Gulf Coast, paid for repairs and refurbishment of the dredge.[3] Before the refurbishment work was completed, Newlin transferred title to the dredge to Quimicos Amibex S.A. de C.V. ("Quimicos"), a Mexican entity owned primarily by Newlin, and then paid for further repairs. Newlin contends that he performed the transfer because Beken and Koy had stopped paying for repairs to the dredge.

Beken, through Richmond and derivatively on behalf of Gulf Coast, filed the instant suit, naming the dredge *in rem* and Newlin as defendants. Appellant Quimicos filed a claim asserting an ownership interest in the dredge. A magistrate judge signed an order for the arrest of the dredge. The court later entered an order requiring $750,000 security to release the dredge. Quimicos

---

[2] For this interest Beken paid $500,000 cash and gave a promissory note for $2 million. Beken never paid the promissory note, which was the subject of a Texas state court suit filed by Newlin against Beken prior to this lawsuit.

[3] The district court found that these payments were all made on Gulf Coast's behalf.

3

No. 09-40942

filed a bond for the vessel's release.

The district court issued an opinion on August 3, 2009, concluding that Gulf Coast had been deprived of its right to possession of the dredge. Based on the amounts contributed by Gulf Coast and Newlin to the refurbishing and towing of the dredge, and on the purchase price paid by Gulf Coast, the court made a pro rata apportionment of the $750,000 bond (which was substituting for the dredge as the *res*). The court concluded that $605,550 of the dredge's value should go to Richmond, and the remainder to the defendants.

Newlin moved to amend the judgment or for a new trial, asserting that the district court lacked admiralty jurisdiction and challenging the merits. The motion was denied in relevant part and the court issued an amended judgment on August 18.[4] Newlin again moved to alter or amend or for a new trial, which the district court again denied in relevant part. Newlin timely appealed.

## II.

The threshold question before us is whether the district court had admiralty jurisdiction over Gulf Coast's claim for possession of the dredge.[5] Federal courts have original jurisdiction over admiralty or maritime civil suits. 28 U.S.C. § 1333(1). This court reviews questions of subject matter jurisdiction *de novo*. *In re Bissonnet Investments LLC*, 320 F.3d 520, 522 (5th Cir. 2003).

There are two possible bases for admiralty jurisdiction in this case: first, if this is a suit to try legal title to, or repossess, a vessel under Rule D of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule D"); second, if the contract and tort claims are properly characterized as "maritime"

---

[4] The motion was granted for the limited purpose of substituting Gulf Coast for Richmond as the judgment's recipient (because Richmond had brought the suit derivatively on Gulf Coast's behalf).

[5] Admiralty jurisdiction is the only possible basis for jurisdiction in the district court; the parties do not assert diversity.

in nature. For the reasons that follow, we conclude that Gulf Coast has an equitable rather than legal claim to title and possession, rendering its Rule D claims unamenable to admiralty jurisdiction. We further conclude that the contract and tort claims asserted by Gulf Coast are not maritime in nature. We therefore hold that admiralty jurisdiction does not extend to this controversy.

A.

We first address whether Gulf Coast's Rule D action is based on a legal claim to the dredge. "[A]dmiralty has jurisdiction in a possessory suit by the legal owner of a vessel who has been wrongfully deprived of possession." *Gallagher v. Unenrolled Motor Vessel River Queen*, 475 F.2d 117, 119 (5th Cir. 1973) (internal citations omitted). A petitory action (to try title) under Rule D "requires [a] plaintiff to assert a legal title to the vessel; mere assertion of an equitable interest is insufficient." *Silver v. Sloop Silver Cloud*, 259 F. Supp. 187, 191 (S.D.N.Y. 1966). Similarly, a party seeking possession of a vessel under Rule D "must have legal title or a legal claim to possession." *Cary Marine, Inc. v. M/V Papillon*, 701 F. Supp. 604, 606 (N.D. Ohio 1988), *aff'd*, 872 F.2d 741 (6th Cir. 1989). A Rule D claim asserting only equitable interests, with no separate basis for admiralty jurisdiction, is not cognizable in admiralty. *See Privilege Yachting, Inc. v. Teed*, 849 F. Supp. 298, 301 (D. Del. 1994); *United States v. Cornell Steamboat Co.*, 202 U.S. 184, 194 (1906).

Gulf Coast offers no support as to why its claim is legal rather than equitable. Gulf Coast acknowledges that it does not have title to the dredge, and the contract on which it is suing does not vest title in Gulf Coast. Quite the contrary: Gulf Coast admits that title was intended to vest first in Industrias and then in *Grupo*. As such, we hold that Gulf Coast did not have legal title or a legal claim to ownership of the dredge. Because the relief sought by Gulf Coast is merely equitable in nature, we find no basis for admiralty jurisdiction over Gulf Coast's Rule D claims for possession and to try title to the dredge. *See The*

No. 09-40942

*Captain Johnson*, 64 F. Supp. 559, 560 (D.N.J. 1946) (finding no admiralty jurisdiction where the plaintiffs "admit they, themselves, however inadvertently and by fraud, placed the legal title to the boat in question" in a third party).

B.

We now turn to whether Gulf Coast's contract and tort claims present a basis for admiralty jurisdiction. Courts of admiralty have jurisdiction over a contractual dispute if the contract at issue is a maritime contract. *Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 288, 290 (5th Cir. 1989). A maritime contract is one "relating to a ship *in its use as such*, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment." *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 98 (5th Cir. 1992) (emphasis added). However, "[t]he mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court." *Richard Bertram & Co. v. The Yacht Wanda*, 447 F.2d 966, 967–68 (5th Cir. 1971). For example, contracts for the construction or sale of a vessel are not maritime contracts. *Lady Lucille*, 963 F.2d at 98. To determine whether a contract is maritime, we look to whether the "nature of the transaction was maritime" and "whether the services performed under the contract are maritime in nature." *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 611, 612 (1991).

Here we have no written contract—only an oral agreement to transfer title of a vessel to a third party. We think it clear that such an agreement does not relate in any meaningful way to commerce on navigable waters or the use of the oyster dredge as a dredge. We are unable to conclude that transfer of title was merely incidental to a broader maritime contract between Gulf Coast and Newlin because this dispute is based on a discrete oral agreement (to transfer title) that is the very basis for Gulf Coast's breach of contract claim. As such, the dispute over this contract is not cognizable in admiralty.

6

We next review whether Gulf Coast's tort claims for wrongful conversion and breach of fiduciary duty afford a basis for admiralty jurisdiction. A tort is not cognizable in admiralty unless (1) it occurred on navigable water, or an injury suffered on land was caused by a vessel on water (the location test); and (2) "the incident has a potentially disruptive impact on maritime commerce," or "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity" (the connection test). *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (internal citations omitted). Gulf Coast's claims fail both tests. The torts of wrongful conversion and breach of fiduciary duty stem directly from Newlin's alleged breach of the parties' contract regarding transfer of title. It is undisputed that the title transfer did not occur on navigable water. Moreover, we have already held that a transfer of title to Quimicos instead of Grupo—"the activity giving rise to the incident"—does not bear a "substantial relationship to maritime activity." *Id.* It relates merely to possession and ownership of the dredge, not to the vessel in its use as such. Neither the contract nor its breach are maritime in nature, and any torts arising therefrom are similarly non-maritime. A court of admiralty thus has no jurisdiction over this lawsuit.

### III.

Admiralty jurisdiction extends to suits to try title or for possession of a vessel under Rule D where the plaintiff asserts legal title or a legal claim to possession. Contract and tort claims are cognizable in admiralty where those claims are maritime in nature. We have held that Gulf Coast's claims fail to satisfy these jurisdictional thresholds. The interest of Gulf Coast in possession or partition of the dredge is merely equitable, and is thus an insufficient basis for admiralty jurisdiction. Furthermore, the contract that Gulf Coast accuses Newlin of breaching is not a "maritime" contract; it relates to transfer of title, not to a vessel in its use as such. Similarly, the tort claims raised by Gulf Coast

No. 09-40942

do not relate to maritime activity.

For the foregoing reasons, we hold that the district court erred in finding that it had admiralty jurisdiction over this case and in rendering a judgment on the merits.[6]  We therefore VACATE the district court's judgment and REMAND for entry of an order of dismissal.

VACATED and REMANDED.[7]

---

[6] In the light of this conclusion, we need not address the district court's judgment on the merits or any other claims raised in this appeal.

[7] Judge Dennis concurs in judgment only.