# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40062

United States Court of Appeals
Fifth Circuit

**FILED**
September 21, 2015

Lyle W. Cayce
Clerk

MINISTRY OF OIL OF THE REPUBLIC OF IRAQ,

Plaintiff - Appellee

v.

KURDISTAN REGION OF IRAQ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:14-CV-249

Before HIGGINBOTHAM, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

The Ministry of Oil of the Republic of Iraq (the "Ministry") filed a complaint alleging that the Kurdistan Regional Government (the "KRG"), which administers a subsidiary region and political subdivision of the Republic of Iraq, unlawfully exported a particular cargo of oil from the country. The district court denied the KRG's motion to dismiss and the KRG now appeals that decision. While this appeal was pending, the Ministry moved to dismiss

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40062

the appeal as moot, submitting uncontested evidence that the KRG had sold the subject oil in a foreign jurisdiction. We agree that the KRG's sale of the oil moots the case and therefore dismiss this appeal.

## BACKGROUND[1]

The Ministry exercises the Republic of Iraq's powers in the oil and gas sector and represents the Republic of Iraq in suits related to oil. The KRG administers the Kurdistan Region of Iraq, a northern region of the Republic of Iraq. Sometime between late-2013 and mid-2014, the KRG caused the equivalent of 1,032,212 barrels of crude oil (the "Cargo"), which had been extracted from oil wells in the Kurdistan Region of Iraq, to be pumped through an oil pipeline to Ceyhan, Turkey. There, the Cargo was loaded aboard the UNITED KALAVRYTA (the "Vessel"), an oceangoing oil tanker. On June 23, 2014, a bill of lading issued, stating that the Cargo would be delivered "unto order" of the KRG, and the Vessel left the port of Ceyhan. The Vessel was originally headed for the Port of Augusta, Italy, but its destination changed repeatedly and it eventually dropped anchor in the Gulf of Mexico, just over 60 miles off the coast of Galveston, Texas. While the Vessel was in navigable waters, the KRG attempted to transfer title of the Cargo to a buyer in the United States.

On July 28, 2014, the Ministry initiated the instant suit in the Southern District of Texas.[2] On September 19, 2014, the Ministry filed its Second

---

[1] Because this appeal comes before us at the motion-to-dismiss stage, we accept the facts as alleged in the Ministry's Second Amended Complaint, as well as the undisputed facts that have subsequently come to light. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 351 (1993).

[2] The Ministry tells us a related suit is currently pending in Iraqi court. According to the Ministry, it filed suit on July 31, 2012, against the KRG in the Federal Supreme Court of Iraq to resolve issues regarding the KRG's exportation of oil generally, not limited to the oil at issue in this appeal. The KRG, however, has failed to accept service of process or respond to summonses in that case. Because the Iraqi judicial system does not allow for default

No. 15-40062

Amended Complaint—the operative complaint in this appeal—making claims against the KRG pursuant to the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1391(f), 1602-1611 (the "FSIA"), and claims against the KRG and an unknown "John Doe Buyer" pursuant to federal maritime law and Texas state law. The complaint asserted that the KRG had engaged in tortious activity by exporting the Cargo and noted that any further sale of the Cargo would prevent the Ministry from exercising any meaningful ownership rights. As relevant here, the complaint requested that the district court (1) declare the Ministry the owner of the Cargo and award the Ministry title; (2) award the Ministry permanent possession of the Cargo; (3) "order adjudge and decree that [the Ministry] have a decree against [the KRG] and John Doe Buyer" for its claims, along with interest and costs; and (4) award any other relief that the court deems proper.

The KRG moved to dismiss the Ministry's complaint, arguing that the Ministry's claims presented a nonjusticiable political question; were barred by sovereign immunity under the FSIA; failed to establish admiralty jurisdiction; were barred by the act of state doctrine; and lacked merit under Iraqi law. On January 7, 2015, the district court granted in part and denied in part the KRG's motion to dismiss, leaving an *in personam* claim against the KRG for violation of Iraqi law and a state-law conversion claim against John Doe Buyer.[3] *See Ministry of Oil of the Republic of Iraq v. 1,032,212 Barrels of Crude Oil Aboard the United Kalavrvta*, No. 3:14-CV-249, 2015 WL 93900, at \*14 (S.D. Tex. Jan. 7, 2015).

---

judgments before the Federal Supreme Court, the KRG's refusal to participate in that suit has prevented the case from proceeding.

[3] The hypothetical John Doe Buyer has never been identified and is not a party to this appeal.

On January 20, 2015, the KRG informed the district court that it would move the Vessel "to another destination in order to pass special surveys designed to maintain its class certification" but that it would also send additional oil shipments to the United States soon. The KRG did not state that it intended to remove the Cargo permanently or sell the Cargo in a foreign jurisdiction. On January 23, the KRG appealed as of right the district court's denial of the KRG's claim of sovereign immunity. The district court granted a stay pending appeal. *Ministry of Oil of the Republic of Iraq v. 1,032,212 Barrels of Crude Oil Aboard the United Kalavrvta*, No. 3:14-CV-249, 2015 WL 851920, at \*5 (S.D. Tex. Feb. 26, 2015). As a condition of the stay, the district court ordered the KRG to give the Ministry ten days' notice of "any further attempted sales or deliveries of oil in the Southern District of Texas." *Id.*

On April 7, 2015, we granted the KRG's motion to expedite this appeal. On the same day, the Ministry filed a motion to dismiss the appeal as moot, on the grounds that the KRG had discharged the Cargo in Israel shortly after the district court had held that the KRG was not immune from this suit. The Ministry submitted evidence that the Vessel had weighed anchor on or around January 25, 2015, and had sailed to Ashkelon, Israel, where the Cargo had been discharged sometime between February 23, 2015, and March 3, 2015. We carried the Ministry's motion to dismiss the appeal as moot with the case.

## DISCUSSION

The Ministry asks us to dismiss the appeal as moot or, in the alternative, to affirm the district court's denial of the KRG's motion to dismiss. The KRG seeks to have the district court's decision reversed and the case dismissed on the basis of the political question doctrine, sovereign immunity under the FSIA, or the act of state doctrine. The KRG contends that we should consider the political question doctrine first, as it concerns subject matter jurisdiction, whereas mootness is merely prudential. Of course, both the political question

and mootness doctrines are justiciability doctrines. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). Similarly, they both touch on a federal court's jurisdiction to hear a claim. *See Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008) ("Invocation of the political question doctrine implicates the district court's jurisdiction."); *United States v. Lares-Meraz*, 452 F.3d 352, 355 (5th Cir. 2006) (per curiam) ("Whether an appeal is moot is a jurisdictional issue because it implicates Article III's requirement of a live case or controversy."). Naturally, where a dispute is nonjusticiable under one doctrine, we need not consider whether it is also nonjusticiable under another. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (quotation marks omitted)); *Gilligan v. Morgan*, 413 U.S. 1, 5 (1973) (resolving case on political question grounds without reaching mootness). Because this appeal is most readily resolved on mootness grounds, we consider that doctrine alone.

## I.    Live Case or Controversy

The Ministry contends that this appeal is moot because the Cargo has been discharged in Israel, making possession of the oil impossible. "[A] federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). "[A]n appeal must be dismissed when an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *Motient Corp. v. Dondero*, 529 F.3d 532, 537 (5th Cir. 2008) (quotation marks omitted). "A claim becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* (quotation marks omitted). Neither we nor the

district court has the power to grant the Ministry's requested relief, possession of the Cargo.  Accordingly, this appeal is now moot.  *See In re Nat'l Mass Media Telecomm. Sys., Inc.*, 152 F.3d 1178 (9th Cir. 1998) (affirming dismissal of appeal as moot where property at issue was sold to a nonparty and only relief plaintiff had demanded was return of the property).

The KRG argues that the appeal is not moot because the Ministry's complaint seeks relief beyond mere possession of the Cargo and those other requests present an ongoing case or controversy.  "Where several forms of relief are requested and one of these requests subsequently becomes moot, the Court has still considered the remaining requests."  *Powell v. McCormack*, 395 U.S. 486, 496 n.8 (1969).

*First*, the KRG contends that the Ministry requested a declaratory judgment when it asked the court to (1) "declare[] [the Ministry] the owner of the Cargo and that title be awarded" to it and (2) "order, adjudge and decree that [the Ministry has] a decree against [the KRG] and John Doe Buyer" for its claims.  The KRG suggests that these requests preserve a "definite and concrete" controversy that we could resolve.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (applying the Article III standing analysis to the "actual controversy" requirement found in the Declaratory Judgment Act); *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993) (holding appeal was not moot where sole issue remaining was request for declaratory relief).  The Ministry responds that it did not request a declaratory judgment, but instead requested to be declared the owner of the Cargo because that is a predicate to obtaining permanent possession of the Cargo pursuant to maritime law.  *See Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 239 (5th Cir. 2010) ("[A] party seeking possession of a vessel under [Admiralty] Rule D must have legal title or a legal claim to possession." (internal quotation marks omitted)); *Goodpasture, Inc. v. M/V Pollux*, 602 F.2d 84, 87 (5th Cir.

No. 15-40062

1979) (ruling that maritime suit for conversion of cargo turns on establishing ownership of the subject cargo).

The Ministry's operative complaint makes clear that this is fundamentally a suit for possession of the Cargo. Nowhere in the complaint did the Ministry explicitly seek a declaratory judgment. Instead, the Ministry's request to be "declared" owner of the Cargo is best understood as an attempt to satisfy the requirements for obtaining full possession of the Cargo under admiralty law. *See Gulf Coast Shell*, 623 F.3d at 239; *cf. Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 250 (5th Cir. 2002) (refusing to treat earlier court decision as a declaratory judgment where plaintiff had not "filed what was clearly a declaratory judgment action"). We will not ascribe to the Ministry a request for relief that does not appear in its complaint and which the Ministry explicitly disclaims. We thus conclude that the Ministry did not seek a declaratory judgment.[4]

*Second*, the KRG argues that because the Ministry requested "interest and costs" against the KRG and John Doe Buyer, a live controversy remains. As a general matter, an outstanding request for interest may prevent a dispute from becoming moot. *See Templin v. Independence Blue Cross*, 487 F. App'x 6, 11 (3d Cir. 2012) (unpublished) ("Dismissal of the claims as moot without considering the plaintiffs' entitlement to interest was error."); *Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 978 (D.C. Cir. 1991) (ruling that appellants' interest claims were moot only if the underlying reimbursement claims were moot at the time they were filed); 13C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3533.3 (3d ed. 2008) ("[M]ootness is avoided by demands

---

[4] The Ministry's redundant request that the court "order, adjudge and decree" that the Ministry has a "decree" against the KRG relates to the Ministry's requests for possession of the Cargo, which is no longer available.

for . . . interest."). But this appeal does not present an ordinary request for prejudgment interest. "[T]he purpose of prejudgment interest is to put a plaintiff in the position he would have been in had he had his trial and recovered his judgment immediately after his injury." *Carlton v. H. C. Price Co.*, 640 F.2d 573, 576 (5th Cir. 1981); *see also Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 335 (1988) ("Prejudgment interest is normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered.").

Here, the Ministry does not seek money damages and cannot obtain possession of the Cargo, so prejudgment interest is not available. The KRG cites no case, and we have uncovered none ourselves, wherein prejudgment interest has been awarded where a plaintiff did not seek monetary damages. *Cf.* 28 U.S.C. § 1605(c) (in a suit to enforce a maritime lien against a foreign state, a decree "may include costs of the suit and, *if the decree is for a money judgment*, interest as ordered by the court." (emphasis added)); 28 U.S.C. § 1961 ("Interest shall be allowed on any *money judgment* in a civil case recovered in a district court." (emphasis added)); *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of use of *money due as damages* . . . ." (emphasis added)). Since the Ministry does not seek money damages, the district court likely could not award interest. Even if we assume, *arguendo*, that interest is theoretically available in a suit for possession of tangible goods, an award of interest would be inappropriate here, since the Ministry never obtained possession of the subject goods. Given that "[t]he essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss," *City of Milwaukee v. Cement Division, National Gypsum Co.*, 515 U.S. 189, 195 (1995), an award of interest cannot serve its purpose standing alone. It would thus be inappropriate to award interest in a suit for possession of tangible goods where such possession has become

impossible. *See id.* Because the Ministry has not requested money damages and cannot obtain possession of the Cargo, the Ministry's demand for interest does not rescue this appeal from mootness.

Additionally, neither the Ministry's request for court costs nor the court's continuing power to award costs averts mootness as to the merits of the case. *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 20-22 (1994) (concluding that no statute could authorize federal court to decide legal question posed in absence of Article III case or controversy . . . "[b]ut reason and authority refute the quite different notion that a federal appellate court may not take any action with regard to a piece of litigation once it has been determined that the requirements of Article III no longer are (or indeed never were) met"; noting that, in cases that have become moot, courts nonetheless have power to award costs and enter dismissal, and holding that they have power to vacate judgments entered by lower courts); s*ee also*, *Heitmuller v. Stokes*, 256 U.S. 359, 362-363 (1921) ("Where no controversy remains, except as to costs, this court will not pass upon the merits." (citing *In re Paper-Bag Cases*, 105 U.S. 766, 772 (1881)).

*Third*, the KRG asserts that the Ministry did, in fact, request money damages for the allegedly converted oil, because the operative complaint asked for "such other and further relief that [the] Court deems just and proper." However, the Ministry did not explicitly request damages in its complaint, the district court did not suggest that the Ministry sought damages, and the Supreme Court has cautioned courts to approach with skepticism claims for damages "extracted late in the day from [a] general prayer for relief and asserted solely to avoid otherwise certain mootness." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997) (discussing eleventh-hour allegation that nominal damages were requested); *see also Fox v. Bd. of Trustees of the State Univ. of N.Y.*, 42 F.3d 135, 142 (2d Cir. 1994) ("[W]e perceive no basis to

allow a belated claim for damages to breathe life into a moribund dispute." (internal quotation marks omitted)).  Moreover, undesired damages should not be "foisted upon the parties by the court."  *Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975).  Since the Ministry never explicitly requested damages and now disavows any such request, we will not foist it upon the Ministry.

*Last,* the KRG makes a number of still less persuasive arguments against mootness.  The KRG suggests the appeal is not moot because the district court ordered the KRG to provide ten days' notice of any additional oil sales in the Southern District of Texas, but that was merely a condition of the court's stay pending appeal, not a remedy for the alleged harm.  The KRG further contends that this appeal is not moot because it has stated an intention to ship more oil for sale in the United States, but hypothetical future shipments do not prevent the dispute regarding the Cargo at issue here from being moot.  *See Staley v. Harris Cnty.*, 485 F.3d 305, 307-09 (5th Cir. 2007) (en banc) (holding that suit over display of monument featuring the Bible at a county courthouse was mooted by removal of the monument during renovations, and that any dispute over a probable redisplay was not ripe for review because the precise manner in which the monument would be redisplayed was unknown).

We conclude that because the KRG has made possession of the Cargo impossible, and because the Ministry requested no other available relief, we must dismiss this appeal as moot.  *See Thibaut v. Ourso*, 705 F.2d 118, 121 (5th Cir. 1983) ("[I]f, pending an appeal an event occurs which renders it impossible for [an] appellate court to grant any relief or renders the decision unnecessary, the appeal will be dismissed as moot." (quoting *NLRB v. O.E. Szekely & Assocs., Inc.*, 259 F.2d 652, 654 (5th Cir. 1958), which referred to and approved the Seventh Circuit's holding in *Fink v. Cont'l Foundry & Mach. Co.*, 240 F.2d 369 (7th Cir. 1957))).

No. 15-40062

## II.     Vacatur

Having decided that this appeal is moot, we now consider whether to vacate the district court's order.  Although federal appellate courts historically vacated a lower court's decision whenever a case became moot on appeal, *see United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950), the Supreme Court has since moved away from that default practice, *see U.S. Bancorp*, 513 U.S. at 23-24.  Vacatur is an "equitable" and "extraordinary" remedy.  *Id.* at 26.  "[V]acatur is to be determined on a case-by-case basis, governed by facts and not inflexible rules."  *Staley*, 485 F.3d at 310.  "The principal condition to which [the Supreme Court has] looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action."  *U.S. Bancorp*, 513 U.S. at 24.  "[W]here mootness results from the voluntary actions of the losing party, such party has 'forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur.'" *Sierra Club v. Glickman*, 156 F.3d 606, 620 (5th Cir. 1998) (quoting *U.S. Bancorp*, 513 U.S. at 24).

Our en banc decision in *Staley* is particularly instructive.  Staley sought to enjoin Harris County, Texas, from the continued display of a Bible in a monument located on the grounds of the county courthouse.  *Staley*, 485 F.3d at 307.  The district court ordered Harris County to remove the Bible, holding that its presence violated the Establishment Clause.  *Id.*  A panel of this court affirmed, and the county sought rehearing en banc.  *Id.*  Some two months before en banc oral argument was to be heard, we learned that the county courthouse had been closed and requested supplemental briefing on the question of mootness.  *Id.*  Harris County then informed us that the monument, including the Bible, would be removed and placed in storage for at least two years, while the courthouse underwent renovations, but asserted that the monument would be redisplayed once the courthouse reopened.  *Id.* at 307-08.

11

No. 15-40062

We held that the county's removal of the Bible mooted the case and we refused to vacate the district court's judgment. *Id.* at 314. We stressed that the county had mooted the suit through its voluntary actions, although it did not do so for the purpose of mooting the case. *Id.* at 312. We also determined that the county's promise to redisplay the monument and its failure to inform the court of the possible mootness counseled against vacatur. *Id.* at 313. Accordingly, we held that the county had failed to show that the balance of the equities favored vacating the district court's judgment. *Id.* at 314.

Here, the KRG mooted this appeal through its voluntary decision to discharge the Cargo in Israel. In so doing, the KRG severely weakened its argument for equitable relief. *See U.S. Bancorp*, 513 U.S. at 24. Like the county in *Staley*, the KRG contends that it did not moot the case for the purpose of depriving us of jurisdiction, but the *Staley* court determined that that does not suffice to establish entitlement to the extraordinary remedy of vacatur. *See Staley*, 485 F.3d at 312. Also like the county in *Staley*, the KRG has said that it plans to send additional shipments of oil in the future, which further undermines its argument for vacatur. *Id.* at 313. Additionally, "[w]here, as here, the complexion of the case has entirely changed while appeal is pending, counsel for both parties have an obligation to so inform the court. That is so even if a party believes it has a basis for arguing that the issue should still be decided." *Mansourian v. Regents of the Univ. of Cal.*, 602 F.3d 957, 963 n.5 (9th Cir. 2010). The KRG failed to inform the court that it had discharged the Cargo in a foreign port, thus making vacatur still less appropriate. *See id.*; *see also Staley*, 485 F.3d at 313. Having considered the facts of this particular case, we hold that the KRG has not carried its burden "to demonstrate

No. 15-40062

'*equitable entitlement to the extraordinary remedy of vacatur*.'" *See Staley*, 485 F.3d at 310 (quoting *U.S. Bancorp*, 513 U.S. at 26).[5]

## CONCLUSION

For the foregoing reasons, we GRANT the Ministry's motion to dismiss this appeal as moot.

---

[5] Since we dismiss this appeal as moot and do not reach the KRG's other jurisdictional or merits arguments, we express no opinion as to the correctness of the district court's decisions below. *See Sierra Club v. Glickman*, 156 F.3d 606, 620 n.8 (5th Cir. 1998).